RIPPLE, Circuit Judge.
 

 After a two-day trial by jury, Leslie J. Webster was found guilty of aiding and abetting the fraudulent concealment of a debtor’s property from a bankruptcy trustee in violation of 18 U.S.C. §§ 152(1) and 2(a). On appeal Mr. Webster raises issues concerning the indictment, the bill of particulars, the trial court’s evidentiary rulings, the sufficiency of the evidence and certain enhancements to his sentence. For the reasons set forth in the following opinion, we affirm in part and vacate in part the judgment of the district court and remand the case for further proceedings.
 

 I
 

 BACKGROUND
 

 Leslie J. Webster has been practicing law since 1979; he is a sole practitioner with a general practice that includes, he estimates, ten to fifteen bankruptcies a year. Mr. Webster’s legal assistance in Steven Deiss’ bankruptcy led to Mr. Webster’s indictment on the charge of bankruptcy fraud.
 

 In July 1986, after managing the Hitching Post Bar in Beldenville, Wisconsin for two years, Steven Deiss purchased the establishment from his friend Joseph Schommer. In January 1991, Deiss retained Mr. Webster to incorporate the ownership of his business in order to limit his liability. While Mr. Webster was proceeding with the incorporation, he advised Deiss and his wife to review their finances and debts and to consider filing a bankruptcy petition to have their debts discharged.
 

 On February 1, 1991, Mr. Webster completed the incorporation process; Deiss’ bar and its assets were conveyed to the new corporation for a return of stock.
 
 [1]
 
 Deiss and
 
 *169
 
 his wife were the only directors; Deiss was the registered agent as well. Mr. Webster notarized the corporation documents.
 

 On March 25, 1991, Deiss and his wife, following Mr. Webster’s advice, filed a voluntary Chapter 7 bankruptcy petition. Mr. Webster, their attorney in the bankruptcy proceeding as well, drafted the Deisses’ bankruptcy schedules and the “Statement of Financial Affairs for a Debtor Not Engaged in Business.” Two responses in those documents led to the charges in this case. First, the financial statement asked whether any of the debtors’ property had been returned to, or repossessed by, the seller or a secured party within the past year. Mr. Webster, on behalf of the Deisses, answered that Deiss had “voluntarily surrendered Bar business to Joseph Schommer in January 1991 for rer lease of unpaid balance- of Land Contract.” Gov’t Ex.3. Absent from the bankruptcy filings was any mention that, on the eve of the bankruptcy, the Bar actually had been incorporated and that Deiss’ assets in the Bar had been conveyed to that corporation. Second, on the debtors’ list of personal property on Schedule B-2 of the bankruptcy petition, Mr. Webster failed to report any stock ownership in the Hitching Post Bar Incorporated; instead, he reported “0” stock ownership and no real property.
 
 Id.
 
 At the section 341 creditors meeting, the Deisses stated under oath that the bankruptcy petition and schedules were true and complete.
 
 [2]
 
 Attorney Webster told Bankruptcy Trustee Kaiser that this was a “no asset case.” R.20, Ex.B- at 2. The bankruptcy court granted the Deisses a discharge on July 16, 1991.
 

 However, Deiss continued to manage, operate and own the Hitching Post Bar as his own until the Bar was destroyed by fire in May 1992. After the fire, Deiss'filed a claim with his insurance company and hired Mr. Webster to help him collect on the claim. Mr. Webster prepared a proof of loss listing “Steven C. Deiss d.b.a. the Hitching Post Bar” as the contract purchaser/stockholder, with an encumbrance to Mrs. Deiss and land contract vendor Joseph Schommer. When the claims manager obtained Deiss’ bankruptcy records, however, he questioned the legitimacy of Deiss’ insurance claim. Consequently, the insurance company’s attorney examined Deiss under oath on September 17, 1992. Mr. Webster appeared on Deiss’ behalf. .
 

 During that interview, Deiss admitted that the bankruptcy schedules and financial report contained .false statements; they indicated that ownership of the Bar had been transferred to Schommer. However, Deiss stated under oath that he never had transferred ownership of the Bar.
 
 [3]
 
 Mr. Webster attempted to clarify the ownership issue by explaining that Deiss had pledged- — but not transferred — stock to Schommer and thus that Schommer had a lien on the stock but no ownership of the Bar.
 
 [4]
 
 Ultimately the insur-
 
 *170
 
 anee
 
 company
 
 settled with Deiss and paid his claim. Deiss continues to own the lot where the Bar stood.
 

 In February 1996, Deiss was charged with bankruptcy fraud; he pleaded guilty to making false statements under oath in a bankruptcy proceeding in violation of 18 U.S.C. § 152(2). His cooperation with the government led to Mr. Webster’s indictment in July 1996 on the charge of aiding and abetting the fraudulent concealment of property from a bankruptcy trustee.
 
 [5]
 

 At Mr. Webster’s trial, Deiss testified that the statement on the bankruptcy schedules that the Bar was voluntarily surrendered to Schommer was false and was intended to avoid having the Bar appear as an asset of his bankruptcy estate. He testified that there had been a plan to make it appear on paper as though Schommer owned the Bar. However, Deiss knew that the bankruptcy schedules were false and that he was giving a false statement to the trustee by declaring that the schedules were correct. Schommer and Mrs. Deiss confirmed Deiss’ statement; Mrs. Deiss further testified that Mr. Webster had advised the Deisses how to respond to any questions from the bankruptcy trustee about the Bar. Schommer testified that Deiss owned the Bar continuously from 1986 until it burned in 1992 and made monthly payments on the land contract throughout that period. The bankruptcy trustee testified that the statements on the bankruptcy schedule caused him to believe that Deiss no longer owned the Bar and thus that it was not an asset available for liquidation and satisfaction of Deiss’ debts. Deiss also testified that he never had seen the four stock certificates until after he gave the statement under oath to the insurance company’s attorney on September 17,1992.
 

 Mr. Webster testified at trial that the stock certificate designating that Schommer owned 100 shares of stock accomplished the transfer of ownership in the Bar from Deiss to Schommer. He explained that that certificate was executed before the bankruptcy petition was filed and that the two certificates in Deiss’ name were executed after the fire in order to evince the return of ownership to Deiss. Mr. Webster further testified that the certificates were backdated to validate corporate decisions made between the date of incorporation and the time the shares were received and executed. According to Mr. Webster, the language on the certificates about pledging the stock to Schommer was added in order to grant a security interest to Schommer when the time came for him to transfer the Bar back to Deiss. When asked why he stated to the contrary during Deiss’ statement under oath to the insurance company attorney, Mr. Webster stated that he was “trying to end the deposition which had dragged on for eight hours with mostly irrelevant questions of' Mr. Deiss.” R.67 at 83-84. Accountant Bernard Driscoll testified that the 1991 federal Subchapter S corporate tax return for Hitching Post Bar, Inc., showed that Schommer was the 90% owner and Deiss the 10% owner. After the two-day trial, the jury returned a guilty verdict. Mr. Webster was sentenced to 15 months in prison. He raises six issues in this appeal.
 

 II
 

 DISCUSSION
 

 A.
 
 Sufficiency of the Indictment
 

 1. The Essential Elements
 

 Count I of the indictment against Mr. Webster, the count on which he was tried and convicted, alleges:
 

 On or about March 25, 1991, in the Western District of Wisconsin, the defendant, LESLIE J. WEBSTER, knowingly and fraudulently concealed from a trustee charged with the control and custody of property in connection with' a case under Title 11 of the United States Code, property belonging to an estate of a debtor in
 
 *171
 
 bankruptcy. (All in violation of Title 18, United States Code, Sections 152(1) and 2(a)).
 

 The bankruptcy fraud statute Mr. Webster allegedly violated states:
 

 A person who&emdash;
 

 (1)knowingly and fraudulently conceals from a custodian, trustee, marshal, or other officer of the court charged with the control or custody of property, or, in connection with a case under title 11, from creditors or the United States Trustee, any property belonging to the estate of a debt- or;
 

 shall be fined under this title, imprisoned not more than five years, or both.
 

 18 U.S.C. § 152. The question before us is whether the indictment complies with Federal Rule of Criminal Procedure 7(c)(1), which states:
 

 The indictment or information shall be a plain, concise and definite statement of the essential facts constituting the offense charged.
 

 The magistrate judge and district judge each concluded the indictment was sufficient; the court then denied the motion to dismiss the indictment.
 

 Before this court Mr. Webster reiterates that the indictment should have been dismissed as insufficient under Rule 7(c)(1). Relying on
 
 Russell v. United States,
 
 369 U.S. 749, 82 S.Ct. 1038, 8 L.Ed.2d 240 (1962), Mr. Webster asserts that the indictment must contain a statement of the “essential facts” and circumstances that would apprise the accused, ‘“with reasonable certainty, of the nature of the accusation against him.’ ”
 
 Id.
 
 at 766, 82 S.Ct. at 1048 (citation omitted). In this case, as in
 
 Russell,
 
 Mr. Webster claims, the indictment did not identify “essential facts,” namely the property he allegedly concealed from a trustee and the bankruptcy estate involved. He submits that he could not determine which of his past actions he had to defend simply by being told the date of the alleged crime and the elements of that crime. Mr. Webster urges us to follow our earlier decision in
 
 United States v. Hinkle,
 
 637 F.2d 1154 (7th Cir.1981). The indictment in
 
 Hinkle,
 
 as in this case, set forth the statute allegedly violated and the dates on which the alleged violation occurred. Just as the
 
 Hinkle
 
 court held that an indictment must provide crucial, minimal information about “the gravamen of the alleged offense,”
 
 id.
 
 at 1158, so too this court should hold, urges Mr. Webster; that the indictment before it was required to plead the essential elements and that its failure to provide a description of the fraudulently concealed property of the debtor violated Rule 7(c)(1).
 

 We review de novo the sufficiency of an indictment.
 
 United States v. Briscoe,
 
 65 F.3d 576, 582 (7th Cir.1995). The Supreme Court has established the criteria by which to measure the sufficiency of an indictment: It is sufficient if it “first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense.”
 
 Hamling v. United States,
 
 418 U.S. 87, 117, 94 S.Ct. 2887, 2907, 41 L.Ed.2d 590 (1974);
 
 see United States v. Allender,
 
 62 F.3d 909, 914 (7th Cir.1995),
 
 cert. denied,
 
 - U.S. -, 116 S.Ct. 781, 133 L.Ed.2d 732 (1996). Notably, the Court in
 
 Russell
 
 praised, as a “salutary development in the criminal law,” the fact that “[cjonvictions are no longer reversed because of minor and technical deficiencies [in the indictment] which did not prejudice the accused.” 369 U.S. at 763, 82 S.Ct. at 1046.
 

 This court has upheld as “usually sufficient” “[a]n indictment that uses the language of the statute when setting forth the offense ... ‘as long as the statutory language unambiguously sets out all the elements necessary to constitute the offense.’”
 
 United States v. Locklear,
 
 97 F.3d 196, 199 (7th Cir.1996) (quoting
 
 Allender,
 
 62 F.3d at 914 (citing
 
 Hinkle,
 
 637 F.2d at 1157)). Clarity and lack of ambiguity in the cited statutory terms are required.
 
 See United States v. Carll,
 
 105 U.S. 611, 612, 26 L.Ed. 1135 (1881) (holding that an indictment is generally sufficient when the statutory terms “fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offence intended to be
 
 *172
 
 punished”). The terms of § 152 are unambiguous, and an indictment cast in these unambiguous terms is marginally sufficient.
 
 Hinkle
 
 required more specificity in the indictment at issue there because the statutory term “facilitate” in 21 U.S.C. § 843 ambiguously could have referred to any of several criminal acts; thus the indictment, which did not identify any act that facilitated the crime or any illegal drug involved, failed to notify the accused of the “gravamen of the alleged offense.” 637 F.2d at 1158.
 
 Russell
 
 presented a similar problem. In that ease, the statute underlying the indictment, 2 U.S.C. § 192, punished anyone who. “refused to answer any question
 
 pertinent
 
 to the question under inquiry.” The Supreme Court pointed out that “the very core of criminality under [that statute] is pertinency to the subject under inquiry of the questions which the defendant refused to answer.” 369 U.S. at 764, 82 S.Ct. at 1047. It then concluded that an indictment that repeats the statutory language, without more, fails to inform a defendant of the nature of the charge against him when “guilt depends so crucially upon such a specific identification of fact.”
 
 Id.
 

 The indictment against Mr. Webster does not contain the same degree of ambiguity with respect to the nature of the accusation. The indictment alleges, in the language of the statute, the time and place of the fraudulent concealment; the person accused of violating the bankruptcy fraud statute; the manner (“knowingly and fraudulently”) in which he concealed the property; the general identification of the party (a “trustee”) from whom it was concealed; and the general identity of the property as part of a bankruptcy estate. By following the statutory language of 18 U.S.C. § 152(1), the indictment included all of the essential elements of the substantive offense. It did not fail to allege a required statutory criterion. See,
 
 e.g., Locklear,
 
 97 F.3d at 199 (holding that the indictment was insufficient because it failed to allege an essential element of the offense under 18 U.S.C. § 493). Consequently, this indictment in the statutory form is sufficient. In fact, when this indictment for bankruptcy fraud is measured by indictments standardly used in drug conspiracy eases, it compares fayorably: In such cases, an allegation of the conspiracy, the time frame involved, and the statute allegedly violated is sufficient.
 
 [6]
 

 Addressing the question of the need for factual detail in the indictment charging this offense, the Second Circuit has explained that, with respect to the crime of concealing bankruptcy assets, “one which is peculiarly within the bankrupt’s own knowledge, and one which may be committed under circumstances which render impossible a description of the assets concealed,” it is permissible “to excuse particularity of description” and to use general terms.
 
 Kanner v. United States,
 
 21 F.2d 285, 287 (2d Cir.) (upholding as sufficient an indictment alleging concealment of “monies and properties then and there belonging to the estate of the bankrupt”),
 
 cert. denied,
 
 275 U.S. 564, 48 S.Ct. 122, 72 L.Ed. 428 (1927);
 
 See United States v. Vanderberg,
 
 358 F.2d 6, 10 (7th Cir.1966) (“An indictment for a violation of 18 U.S.C.A. § 512 need not allege evidentiary facts showing the manner of the concealment.”). Mr. Webster cannot claim that he could not prepare a defense simply by knowing the offense and the date of the alleged crime. He has not suggested that he filed any other bankruptcies on March 25, 1991 in the Western District of Wisconsin. Moreover, the Deiss-es’ bankruptcy was a no-asset case with only one property needing explanation in the bankruptcy: the Bar that was “surrendered” to Schommer. Thus the crime was “one which is peculiarly within the debtor’s own knowledge.”
 
 Kanner,
 
 21 F.2d at 287. In addition, Mr. Webster sought more information through a bill of particulars, and he received the identification of the property at issue.
 
 See United States v. Mosley,
 
 786 F.2d 1330, 1334 (7th Cir.) (‘When an indictment contains all the essential elements of the charged offense, the accused may obtain the
 
 *173
 
 factual proof supporting the charges, if vital to his defense, by a motion for a bill of particulars.”),
 
 cert. denied,
 
 476 U.S. 1184, 106 S.Ct. 2919, 91 L.Ed.2d 548 (1986).
 

 We conclude that the indictment against Mr. Webster, despite its lack of factual detail concerning the property allegedly concealed, is minimally sufficient.
 
 [7]
 

 See Allender,
 
 62 F.3d at 914 (“The test for validity is not whether the indictment could have been framed in a more satisfactory manner, but whether it conforms to minimal constitutional standards.”). It is a “plain, concise and definite,” unambiguous statement. The district court did not commit reversible error in denying Mr. Webster’s motion to dismiss the indictment.
 

 2. The Bill of Particulars
 

 Along with his motion to dismiss the indictment, Mr. Webster filed a motion for a bill of particulars. The government responded to the motion by providing the following information concerning Count I of the indictment:
 

 The transaction or activity constituting the offense charged in Count I of the indictment was the defendant’s aiding and abetting the concealment of Steven Deiss’ ownership of the Hitching Post Bar.
 

 R.20 at 1. Relying on
 
 Russell,
 
 Mr. Webster claims that the indictment is insufficient and “that a bill of particulars cannot save an invalid indictment.” 369 U.S. at 770, 82 S.Ct. at 1050. According to Mr. Webster, the property identified in the bill of particulars was “the Hitching Post Bar,” not “the Hitching Post Bar, Inc.” Therefore the only permissible basis for conviction, he submits, was that he concealed ownership of the Bar itself. However, the trial court refused to confine the government’s evidence at trial to proof that Mr. Webster aided and abetted the concealment only of Deiss’ ownership of the Bar.
 
 [8]
 
 Instead, over the defense counsel’s objection, the government offered evidence that Deiss failed to disclose his ownership of the.
 
 stock
 
 in Hitching Post Bar¿
 
 Inc.
 
 Mr. Webster insists that the district court’s error in permitting evidence beyond the scope of the bill of particulars might have led the jury to convict Mr. Webster based on Deiss’ ownership of the stock instead of ownership of the Bar itself. According to Mr. Webster, this error requires reversal of his conviction.
 

 The government responds that the bill of particulars merely amplified a valid indictment. The bill informed Mr. Webster that the government was focusing on the concealment of Deiss’ ownership of the Bar, the property Deiss said he had transferred to Schommer. In the second paragraph of the bill of particulars, the government further explained: “The particular statements related to the Deiss’ surrender of Hitching Post Bar to Joseph Schommer and their not having any stock or interest in incorporated and unincorporated companies.”
 
 [9]
 
 R.20 at 1. Therefore, contends the government, neither the indictment nor the bill of particulars was inconsistent with the evidence at trial.
 

 ■ Mr. Webster argues' that there was an impermissible variance of proof in this case between the'proof offered at trial, démon-strating Deiss’ ownership of stock in the Hitching Post Bar, Inc., and the bill of particulars, stating that the ownership issue concerned the Bar. In our view, there was no variance; the bill of particulars referred to concerns about Deiss’ ownership both of the
 
 *174
 
 Bar and of stock, and it appended as exhibits the portions of Deiss’ bankruptcy filings in which he stated that he had “voluntarily surrendered” the Bar business to Schommer and owned no stock or interests in incorporated or unincorporated companies. The information in the bill of particulars gave Mr. Webster all the information he needed to prepare his defense. The evidence at trial revealed that the Bar was incorporated.- It was not surrendered to Schommer, and Deiss owned at least 10% of the stock in the Bar. In sum, Mr. Webster cannot succeed in obtaining reversal of his conviction by claiming a variance.
 
 [10]
 

 The distinction Mr. Webster tries to draw between his ownership of the Bar and of shares of the Bar is meritless. The gravamen of the assertion is that the debtor’s continuing ownership of the Bar was fraudulently concealed from the trustee on the bankruptcy schedules and that the concealment was accomplished by the joint efforts of the debtor and his attorney, Mr. Webster.
 
 See United States v. Overstreet,
 
 106 F.3d 1354, 1358 (7th Cir.) (concluding that an adequate statute “constitutes a sufficient charge as used in the indictment,” and, “supplemented with the bill of particulars, the indictment leaves no doubt what the charge meant and what constituted the offending conduct”),
 
 cert. denied,
 
 - U.S.-, 117 S.Ct. 2491, 138 L.Ed.2d 998 (1997). We hold that the government’s evidence at trial did not vary from the bill of particulars or the indictment.
 

 B.
 
 Evidentiary Rulings
 

 Mr. Webster submits that the district court abused its discretion in making two evidentiary rulings.
 

 1.
 

 The first ruling involved the testimony of Terry Blaedorn, an expert witness proffered by Mr. Webster to testify that the value of the Bar did not exceed the amounts owed on the land contract. The trial court granted the government’s motion in limine to preclude such testimony on the ground that it was irrelevant. According to the court, the value of the Bar was not relevant to the questions whether the Bar was fraudulently concealed from the trustee or whether Mr. Webster intended the concealment.
 

 Mr. Webster submits that an expert’s testimony concerning the Bar’s value would give credence to Mr. Webster’s own position and would demonstrate that he lacked the intent to conceal property. We review the district court’s preclusion of Mr. Webster’s proffered expert testimony under the abuse of discretion standard,
 
 see United States v.
 
 Navarro, 90 F.3d 1245, 1262 (7th Cir.1996);
 
 Frymire-Brinati v. KPMG Peat Marwick,
 
 2 F.3d 183, 186-87 (7th Cir.1993), and we conclude that the district court acted well within its discretion in refusing the admission of this testimony. The court allowed Mr. Webster to testify that neither he nor Deiss believed that the Bar had any value over and above the debt to Schommer at the time. The court also stated its willingness to admit the land contract, with the value redacted, at trial and to consider the value of the Bar at the time of sentencing. However, the court properly determined that the valuation of the allegedly concealed property has no bearing on Mr. Webster’s' material misrepresentations to the trustee, and Mr. Webster concedes that point.
 
 [11]
 
 The opinion of an expert hired by the defendant at the time of trial to assess the Bar’s value has at best only a tangential relevance either to Mr. Webster’s
 
 *175
 
 opinion of-that value in 1991, when Mr. Webster advised Deiss on the bankruptcy filing, or to Mr. Webster’s intent to conceal assets from the bankruptcy trustee. Its potential to confuse the jury is significant. We conclude that the district court did not abuse its discretion in excluding that expert testimony.
 

 2.
 

 The district court also abused its discretion, claims Mr. Webster, by refusing to admit testimony from two bankruptcy trustees concerning their standard treatment of voidable preferences.
 
 [12]
 
 The need for this testimony, Mr. Webster explains,' arose after Deiss testified that Mr. Webster told him that Kaiser, the trustee assigned to the Deiss bankruptcy, was lazy and would not ask about the Bar.
 
 [13]
 
 To refute Deiss’ testimony, Mr. Webster wanted the two trustees to testify concerning their standard practices regarding preferences. Bankruptcy Trustee Herrell was not allowed to testify at all. Trustee Kaiser testified, but Mr. Webster claimed he was not permitted to explain his method for avoiding preferential transfers. Such testimony, Mr. Webster suggested, would have negated the government’s suggestion that Mr. Webster knowingly falsified the bankruptcy schedule because he believed at the time that a lazy trustee had been assigned to the Deisses’ case.
 

 This contention is without merit. With respect to Trustee Kaiser, the district court hardly abused its discretion in determining that the bankruptcy trustee’s standard practice in reviewing preferential property transfers was irrelevant.
 
 [14]
 
 Moreover, Mr. Webster’s claim misrepresents what occurred at trial. Trustee Kaiser did testify about his evaluation of the transfer of the Bar, and Mr. Webster did cross-examine him extensively on whether the surrender could have been a
 
 *176
 
 preferential transfer.
 
 [15]
 
 With respect to the proffered testimony of Trustee Herrell, evidence from a bankruptcy trustee not involved in this case, describing his handling of preferential transfers, is even more irrelevant and was properly excluded. In this case, Mr. Webster failed to meet his burden of showing that the court abused its discretion when it excluded expert testimony. We uphold the trial court’s evidentiary rulings.
 

 C.
 
 Sufficiency of the Evidence
 

 Mr. Webster contends there was insufficient evidence to convict him of aiding and abetting in the concealment
 
 of Deiss’
 
 ownership of the Bar. He filed motions for judgment of acquittal at the close of the government’s case, at the close of testimony, and following the verdict. Each motion was denied. We now consider his present challenge, on appeal, to the sufficiency of the evidence of bankruptcy fraud. Viewing that evidence in the light most favorable to the prosecution, we must decide whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.
 
 Jackson v. Virginia,
 
 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979);
 
 United States v. Ellis,
 
 50 F.3d 419, 422 (7th Cir.),
 
 cert. denied,
 
 - U.S. ——, 116 S.Ct. 143, 133 L.Ed.2d 89 (1995). Circumstantial evidence is sufficient to prove fraudulent intent and to support a conviction.
 
 Ellis,
 
 50 F.3d at 422 (citing
 
 United States v. Goodstein,
 
 883 F.2d 1362, 1365 (7th Cir.1989), ce
 
 rt. denied,
 
 494 U.S. 1007, 110 S.Ct. 1305, 108 L.Ed.2d 481 (1990)).
 

 Section 152 “criminalizes the conduct of those who knowingly and fraudulently transfer or conceal the property of a debtor.”
 
 Ellis,
 
 50 F.3d at 423. Mr. Webster claims that the government failed to prove three of the four elements of 18 U.S.C. § 152: It did not prove that the Hitching Post Bar belonged to the bankruptcy estate; that Mr. Webster aided and abetted the concealment of the Bar from the bankruptcy trustee; and that he helped conceal the Bar knowingly and fraudulently. The undisputed evidence, states the defendant, is that the Bar was not part of the debtor’s estate and that its preferential transfer to Schommer was shown on the Deisses’ bankruptcy schedules. Such evidence as Deiss’ continued management of the Bar during and after bankruptcy; his payments to Schommer; and his paying the bills, ordering supplies and obtaining insurance are not inconsistent with Schommer’s ownership of the Bar, argues Mr. Webster, because Schommer trusted Deiss with the management of the Bar. In addition, he submits, he did not conceal assets; he listed the Bar as a preferential transfer.
 
 [16]
 

 Mr. Webster’s argument is based upon evidence carefully selected in the light most favorable to himself. When the evidence is viewed in the light most favorable to the government, however, it sufficiently establishes bankruptcy fraud.
 
 See United States v. Key,
 
 859 F.2d 1257, 1260 (7th Cir.1988) (“Section 152 prohibits false statements and concealment of assets; no more and no less.”). Deiss’ testimony, supplemented by the introduction of the land contract and the insurance company’s “Sworn Proof of Loss” statement, demonstrated that Deiss purchased the Bar in 1986 and owned it continuously until it was destroyed in 1992. Deiss testified that he never transferred the Bar to
 
 *177
 
 Schommer, and Sehommer confirmed that he never owned the Bar again after Deiss bought it in 1986. Deiss made regular payments on the land contract to Schommer every month from 1986 until the fire in 1992. From that evidence, the jury reasonably could have found that the Hitching Post Bar was an asset of the debtors’ estate when Deiss filed bankruptcy in 1991.
 

 The evidence reflected that Mr. Webster’s handwritten worksheet, from which the schedules were prepared, stated that the Bar had been surrendered to Schommer and that the Deisses owned no stock. Deiss testified that Mr. Webster had suggested that the Deisses file bankruptcy and decided how the Bar would be reflected on the bankruptcy documents. Mrs. Deiss testified that Mr. Webster told her, before the section 341 hearing, that the trustee was lazy and would not ask about the Bar, and that, if he did, the Deisses should say it had been surrendered to Sehommer. Then, less than a year after the Deisses’ bankruptcy case closed, the Bar burned down. Mr. Webster attempted to collect on the insurance policy for the Bar, on Deiss’ behalf, without even questioning Deiss’ interest in the matter. This evidence could have led a jury reasonably to conclude that Mr. Webster concealed Deiss’ ownership of the Bar from the bankruptcy trustee.
 

 There was also evidence from which a jury reasonably could have found the essential elements of knowing and fraudulent concealment by the defendant. The bankruptcy schedules, first planned on a worksheet and then filled out by Mr. Webster, falsely stated that the Bar was “surrendered” to Schom-mer in January 1991. Mr. Webster incorporated the Bar for1 Deiss in February 1991; he backdated the stock certificates to fit the purpose he needed at the time.
 
 See Good-stein,
 
 883 F.2d at 1364-65 (noting that backdated agreements that validated move of business assets and operation without notice to creditors or court were evidence of fraudulent transfer);
 
 United States v. Center,
 
 853 F.2d 568, 570-71 (7th Cir.1988) (concluding that defendant who executed backdated documents to conceal a debt omitted from bankruptcy schedules violated § 152). According to Mr. Webster, the first two certificates were the vehicle by which the Bar was transferred to Sehommer. The one certificate declaring Deiss the owner of 50 shares was made around September 1992 to satisfy the insurance company ‘ that Deiss owned the Bar. Later, Mr. Webster stated to the insurance company attorney that. Deiss merely had pledged stock to Schommer. The lawyer testified at his trial, however, that he had lied concerning the “pledged” stock. A jury could make its own credibility determinations concerning Mr. Webster’s convoluted testimony. In addition, it reasonably could have found credible Deiss’ testimony. After Deiss had made extensive improvements to the Bar, he hired Mr. Webster to incorporate his business. He was experiencing no particular financial crisis at.that time and had no reason to surrender his business to Schommer. Deiss’ explanation of the sequence of events could have led a jury reasonably to conclude that lawyer Webster orchestrated Deiss’ bankruptcy by fraudulently claiming that the one major asset, the Bar, was transferred for the mere value of the contract balance — so that his client could keep the newly incorporated business and eliminate the credit card debt without risking the loss of the Bar.
 
 See Key,
 
 859 F.2d at 1261 (holding that false statement about worthlessness of corporate property was a material falsehood that violated § 152). Mr. Webster’s own testimony contains sufficient admissions from which a rational trier of fact could find that he fraudulently concealed assets from the trustee.
 
 [17]
 
 The Bar was incorporated, not surrendered,
 
 *178
 
 in February rather than January, 1991. Deiss owned at least 10% of the stock in the Hitching Post Bar, Inc., and had complete control of the Bar throughout the bankruptcy and afterwards until the fire. Other questions on the bankruptcy forms were omitted or answered falsely.
 
 See United States v. Ellis,
 
 50 F.3d 419, 423 (7th Cir.1995) (failure to disclose, on bankruptcy schedules, prior bankruptcies constitutes a “false statement” under § 152);
 
 United States v. Cherek,
 
 734 F.2d 1248, 1254 (7th Cir.1984) (holding that omissions of material information from bankruptcy petition may support a § 152 conviction), ce
 
 rt. denied,
 
 471 U.S. 1014, 105 S.Ct. 2016, 85 L.Ed.2d 299 (1985). In addition, Mr. Webster’s statement in the insurance claim proceedings was directly contrary to that in the concealment trial. The jury had before it all this evidence. It reasonably could have concluded that the transfer of the Bar, in all its forms, was fraudulent and was committed with intent to defeat the bankruptcy laws.
 
 See Goodstein,
 
 883 F.2d at 1370. We hold that there was sufficient evidence from which the jury could have convicted Mr. Webster of aiding and abetting in the concealment of Deiss’ ownership of the Bar.
 

 D.
 
 Fraud Enhancement
 

 Finally, Mr. Webster challenges the district court’s application of the fraud enhancement found at U.S.S.G. § 2F1.1(b)(3)(B), which increases a sentence for “violation of any judicial or administrative order, injunction, decree, or process not addressed elsewhere in the guidelines.” This circuit has applied the enhancement to bankruptcy fraud convictions on the ground that bankruptcy fraud constitutes a violation of judicial process.
 
 United States v. Michalek,
 
 54 F.3d 325, 331 (7th Cir.1995). The district court, relying on
 
 Michalek,
 
 found that Mr. Webster perpetrated “fraud upon the bankruptcy court, fraud upon the proceedings” and concluded that his conduct “was a violation of the judicial process, the bankruptcy process, the bankruptcy court.” R.68 at 34.
 

 Mr. Webster claims that the guideline cannot apply to him: First, he violated no judicial or administrative order of the bankruptcy court; and second, he was not the debtor and thus had no reason to knowingly abuse the bankruptcy process or knowingly hinder the orderly administration of the bankruptcy estate by concealing assets.
 

 Mr. Webster’s first submission has been rejected by us and by other circuits who agree that the knowing concealment of assets during a bankruptcy proceeding constitutes a violation of a judicial process within the meaning of the guideline.
 
 [18]
 
 Mr. Webster’s second contention also fails. Just as the Eighth Circuit enhanced the sentence of a nondebtor defendant who was an employee in a business that prepared and filed fraudulent bankruptcy petitions that concealed assets from the bankruptcy court,
 
 see Welch,
 
 103 F.3d at 907-08, so too we have no hesitation in finding appropriate this enhancement for Mr. Webster, the attorney who prepared and filed the Deisses’ fraudulent bankruptcy forms, who deceived the trustee by stating that Deisses’ bankruptcy was a “no-asset” case, who represented Deiss later when he claimed the insurance for the very property he told the bankruptcy court, only a year before, had been transferred to another. The district court did not clearly err in imposing a two-level enhancement pursuant to § 2F1.1(b)(3)(B) for violation of judicial process.
 

 
 *179
 
 E.
 
 Obstruction of Justice Enhancement
 

 At the sentencing hearing, the district court also imposed a two-level increase in Mr. Webster’s sentence under the obstruction of justice guideline, U.S.S.G. § 3C1.1. Mr. Webster asserts that the district court erred when enhancing his sentence under § 3C1.1 because it failed to make specific findings of perjury. We review the district court’s finding that Mr. Webster obstructed justice for clear error.
 
 United States v. Godinez,
 
 110 F.3d 448, 456 (7th Cir.1997);
 
 Michalek,
 
 54 F.3d at 334.
 

 A person who, under oath or affirmation, “gives false testimony concerning a material matter with the willful intent to provide false testimony, rather than as a result of confusion, mistake, or faulty memory,” meets the criteria of § 3C1.1.
 
 United States v. Dunnigan,
 
 507 U.S. 87, 94, 113 S.Ct. 1111, 1116, 122 L.Ed.2d 445 (1993). The guideline increases the offense level of a defendant who “willfully obstructed ... the administration of justice during the investigation, prosecution, or sentencing of the instant offense.” § 3C1.1. The Commentary includes the following relevant examples of the types of conduct to which § 3C1.1 applies: committing perjury, producing false documents or records during a judicial proceeding, and providing materially false information to a judge or magistrate. U.S.S.G. § 3C1.1, comment. (n.3b, c, f). A finding of perjury results in the enhancement,
 
 see United States v. Guiterrez,
 
 92 F.3d 468, 472 (7th Cir.1996), but a finding that the defendant simply denied his guilt will not support the two-level increase.
 
 United States v. Hickok,
 
 77 F.3d 992, 1007 (7th Cir.),
 
 cert. denied,
 
 — U.S. -, 116 S.Ct. 1701, 134 L.Ed.2d 800 (1996). The Supreme Court’s guidance to district courts for making this assessment is succinctly summarized in a recent opinion from our court:
 

 To minimize the tendency to apply the enhancement woodenly after a defendant testifies in his own defense, the Supreme Court stated that when the defendant objects to the enhancement, the district court should make separate findings sufficient to “establish a willful impediment to or obstruction of justice, or an attempt to do the same.” The
 
 Dunnigan
 
 Court went on to stress that “it is preferable for a district court to address each element of the alleged perjury in a separate and clear finding.” However, the Court also recognized that the enhancement could be upheld on appeal so long as “the [district] court makes a finding of an obstruction of or impediment of justice that encompasses all of the factual predicates for a finding of perjury.”
 

 United States v. Buchannan,
 
 115 F.3d 445, 451 (7th Cir.1997) (quoting
 
 Dunnigan,
 
 507 U.S. at 95, 113 S.Ct. at 1117). On the basis of the
 
 Dunnigan
 
 directives, we have remanded cases in which the district court failed to make specific findings
 
 (see, e.g., Buchannan,
 
 115 F.3d at 453) and have affirmed those in which the district court’s findings satisfied
 
 Dunnigan (see, e.g., Godinez,
 
 110 F.3d at 457).
 

 In this case, we believe the district court failed to state with adequate clarity the factual basis for its conclusion that the defendant deserved the enhancement. Concerning the first false statement mentioned by the district court, the government agrees with the defendant that there was no contradictory testimony about when the incorporation of the bar was completed and we shall not speculate, as the government suggests, that the district court may have meant to refer to the inconsistent testimony about when the stock certificates were completed. The court’s finding that Mr. Webster testified falsely before both the bankruptcy and the district courts also lacks the sort of specificity required under
 
 Dunnigan.
 
 The court’s reference to the “overwhelming evidence” that had been summarized earlier in the sentencing proceeding, when the court denied the defendant’s motion for acquittal, is not sufficient. It is incumbent upon the court “to address each element of the alleged perjury in a separate and clear finding” or to make a finding of an obstruction of justice that encompasses all of the factual predicates for a finding of perjury.
 
 Dunnigan,
 
 507 U.S. at 95, 113 S.Ct at 1117. “Our cases hold that ‘a district judge deciding whether to apply a sentence enhancement for obstruction of justice need not conduct a mini-trial
 
 *180
 
 with respect to each of the defendant’s false statements.’ ”
 
 Godinez,
 
 110 F.3d at 456. Nevertheless, more specificity than is present here must be evident in the record.
 
 [19]
 

 Conclusion
 

 For the foregoing reasons, the judgment of the district court is affirmed in part and vacated in part. The case is remanded for proceedings consistent with this opinion.
 

 Affirmed in Part, Vacated in Part and Remanded.
 

 [1]
 

 . Apparently only four stock certificates in Hitching Post Bar, Inc. were issued. All four were dated February 1, 1991.. The first certified that Deiss owned 100 shares and transferred them to Schommer. The second certified that Schom-mer owned 100 shares; however, on the reverse side, it stated that Deiss had pledged the shares to Schommer as collateral for the land contract. The third certificate indicated that Deiss owned 50 shares outright. The fourth represented that Deiss had pledged the 450 shares he owned to Schommer.
 

 All the certificates had been backdated. Mr. Webster’s secretary testified at trial that the stock certificates arrived in the law office on March 11, 1991. Mr. Webster testified that the first two certificates were issued to Deiss and then assigned to Schommer between March 11 and 21,
 
 1991;
 
 the second two were issued after the bar burned, sometime in mid-1992. However, Deiss testified that he did not see the certificates until
 
 *169
 
 sometime after September 17, 1992. Moreover, Schommer denied owning stock.
 

 [2]
 

 . The first meeting of the creditors of a debtor is held pursuant to 11 U.S.C. § 341 and is usually called a § 341 meeting or hearing. Its purpose is to give creditors and the trustee the opportunity to examine the debtor, concerning his acts, conduct, property or any other matter that may affect the administration of the bankruptcy estate or the debtor's right to a discharge or to the dischargeability of certain debts.
 
 See
 
 B. Wein-traub & A. Resnick,
 
 Bankruptcy Law Manual
 
 § 1.11 [3] (1980).
 

 [3]
 

 . Deiss also reported that the bankruptcy filings falsely reported the following information: (1) Deiss had not been engaged in business for the six years preceding bankruptcy: (2) Deiss had no income in 1988 and 1989; (3) Deiss kept no accounts or records; (4) there was no listing of monthly land contract payments to Schommer; (5) Deiss had "surrendered” or transferred the Bar to Schommer. Deiss admitted that these statements were not true.
 

 [4]
 

 .Mr. Webster’s full explanation is as follows:
 

 Something you might want to note for clarification purposes is that with respect to the Bar, Steve [Deiss] was under the impression — -Steve didn't realize the difference between pledging and transferring stock and what he did do in late January or early February [1991] was give Joe a lien on the stock because Joe never had a lien on the personal property of the corporation and so he did do that and he — it was his understanding that that meant that Joe owned 90 percent of the bar and it wasn't until I explained to him it wasn’t to go — that's not what he did at all, what he did was he actually pledged that stock to him which gives him a lien on it. It doesn't actually transfer the stock to him and that’s part of the execution.
 

 Gov't Ex.9 at 283-84. At his own trial, Mr. Webster admitted that this statement was not
 
 *170
 
 true and that Schommer had owned the stock. In fact, the pledged stock certificates were created after the fire and were backdated to February 1, 1991, he explained, as Deiss had asked
 
 him to
 
 do.
 

 [5]
 

 . Count I alleged that Mr. Webster fraudulently concealed from a bankruptcy trustee property belonging to a debtor's estate, in violation of 18 U.S.C. §§ 152(1) and 2(a). Counts II and III were dismissed.
 

 [6]
 

 .
 
 See United States v. Edwards,
 
 105 F.3d 1179, 1181 (7th Cir.1997) (stating that an indictment for conspiracy to distribute drugs need not identify the controlled substances or the quantities involved),
 
 petition for cert. filed
 
 (U.S. April 21, 1997) (No. 96-8732);
 
 United States v. Spears,
 
 965 F.2d 262, 279 (7th Cir.) (stating indictment “need not allege overt acts”),
 
 cert. denied,
 
 506 U.S. 989, 113 S.Ct. 502, 121 L.Ed.2d 438 (1992).
 

 [7]
 

 . The government told us at oral argument that, at the time it filed this indictment, it knew the identity of the debtor whose estate .was involved and the properly being concealed. Yet it did not provide that information in the indictment. We do not understand why the government filed such a scanty indictment.
 

 [8]
 

 . The district court explained its decision:
 

 The Court believes that the transaction or activity constituting the offense charged in Count 1 of the Indictment, the concealment of the ownership of the Hitching Post Bar, is inclusive of many of those documents which may very well have been an indicia of ownership, whether it be stock certificates, whether it be a land contract, whether it be a security agreement, whether it be an indicia of ownership relating thereto____ I believe the Indictment is specific as well as broad enough' to show what those indicia of ownership were.
 

 R.66 at 7.
 

 [9]
 

 .This response by the government was related to the false statement Mr. Webster was alleged to have made under penalty of perjury, as alleged in Count II of the indictment. That count eventually was dismissed.
 

 [10]
 

 .
 
 See United States v. Curtis,
 
 37 F.3d 301, 305 (7th Cir.1994) (requiring defendant claiming variance to prove that the evidence at trial was insufficient to prove the jury’s finding and that he was prejudiced),
 
 cert. denied,
 
 513 U.S. 1154, 115 S.Ct. 1110, 130 L.Ed.2d 1075 (1995);
 
 United States v. Mosley,
 
 786 F.2d 1330, 1335-36 (7th Cir.) (" 'A variance between [the information in a bill of particulars and the evidence at trial] is not fatal unless the defendant has been deprived of an adequate opportunity to prepare a defense or has been exposed to a risk of béing prosecuted twice for the same offense.' ”) (citation omitted),
 
 cert. denied,
 
 476 U.S. 1184, 106 S.Ct. 2919, 91 L.Ed.2d 548 (1986).
 

 [11]
 

 .
 
 See United States v. Grant,
 
 971 F.2d 799, 809 (1st Cir.1992) (en banc) (value of asset concealed from trustee not relevant to determination whether violation of 18 U.S.C."§ 152 occurred);
 
 Kanner v. United States,
 
 21 F.2d 285, 287 (2d Cir.1927) (value of concealed property not essential element of § 152).
 

 [12]
 

 ."Preferences are transfers in which an insolvent debtor favors certain creditors over others." 5 Lawrence P. King,
 
 Collier on Bankruptcy
 
 ¶ 547.10, at 547-93 (15th ed. rev.vol.1997). Under § 547(b) of the Bankruptcy Code, a trustee may avoid certain prebankruptcy transfers as preferences. All the elements of an avoidable preference, as set forth in § 547(b), must be present before the trustee can avoid the transfer. "Essentially, the transfer, to be preferential, must diminish the fund to which other creditors can legally resort for the payment of their debts, thus making it impossible for other creditors of the same class to obtain as great a percentage as the favored one."
 
 Id.
 
 ¶ 547.03[2] at 547-23. " ‘The purpose of the preference statute is to prevent the debtor during his slide toward bankruptcy from trying to stave off the evil day by giving preferential treatment to his most importunate creditors" ”
 
 In re Midway Airlines, Inc.,
 
 69 F.3d 792, 797 (7th Cir.1995) (quoting
 
 In re Tolona Pizza Prods. Corp.,
 
 3 F.3d 1029, 1032 (7th Cir.1993)).
 

 The Code establishes that "it is the trustee alone who has the power to avoid preferential transfers.”
 
 Id.
 
 ¶ 547.10 at 547-93. In this case, the debtor and his attorney declared that the Bar was "surrendered" to Schommer for a release of the unpaid balance of the land contract. They, not the trustee, determined that the value of the Bar was equivalent to the contract balance and that the property should be transferred back to Schommer. Mr. Webster, in effect, usurped the decision-making power of the trusted and the bankruptcy court.
 
 See United States v. Cherek,
 
 734 F.2d 1248, 1254 (7th Cir.1984) ("Even if the asset is not ultimately determined to be property of the estate under the technical rules of the Federal Bankruptcy Code, Section 152 properly imposes sanctions on those who preempt a court’s determination by failing to report the asset."),
 
 cert. denied,
 
 471 U.S. 1014, 105 S.Ct. 2016, 85 L.Ed.2d 299 (1985);
 
 cf. United States v. Shadduck,
 
 112 F.3d 523, 528 (1st Cir.1997) (concluding that debtor’s reason for omitting pension funds from bankruptcy schedules&emdash;because they were exempt&emdash;"would short-circuit” the exemption-claim screening process in the Code). In fact, of course, the Bar was not transferred to Schommer at all; Deiss retained ownership. Thus the § 152 violation is actually fraudulent misrepresentation of the transfer.
 
 See
 
 11 U.S.C. § 548 (the fraudulent transfer provision that grants to the trustee the authority to avoid a transaction that was made within one year of the bankruptcy filing date and "that depletes the debtor's assets to the détriment of the bankruptcy estate”); 5 King,
 
 Collier on Bankruptcy
 
 ¶548.01[1], at 548-5.
 

 [13]
 

 . Mr. Webster informs us that he certainly would not have known that Kaiser, the trustee ultimately assigned to Deiss’ bankruptcy, would have been chosen from among the two trustees available. For this reason, he asserts, he would not have commented to Mrs. Deiss that Kaiser was lazy.
 

 [14]
 

 .
 
 See In re Sheridan,
 
 57 F.3d 627, 635 (7th Cir.1995) (stating that reversal of a district court's evidentiary decision regarding expert testimony "requires more than bare arguments that the expert is qualified and his testimony would be relevant”).
 

 [15]
 

 . The trustee defined "preference” and testified about the general procedure and his own normal procedure for looking at preferences. When defense counsel asked him whether it was his normal procedure to ask about preferences, Kaiser responded, "[I]f the schedules reflect that some transfer has been made that could be a preference, yes, sir, it is.” R.66 at 90.
 

 [16]
 

 . Mr. Webster notes that, because the bankruptcy petition filings stated that Deiss surrendered the Bar in January 1991, the trustee could have treated the Bar as an asset that was part of the debtors' estate because it had been owned by the debtors within one year of filing.
 
 See
 
 11 U.S.C. § 548(a). However, Mr. Webster assured the bankruptcy trustee that this was a "no asset case,”
 
 see
 
 Gov’t Ex.8, and the statement clearly suggested that the value of the Bar was equal to the unpaid balance of the land contract held by Schommer. No stock ownership was revealed. It is true that Deiss' bankruptcy filings, prepared by Mr. Webster as attorney of record, did not hide completely the existence of the Bar. Bits and pieces of information and misinformation were provided. However, neither Deiss nor Mr. Webster fulfilled his obligation to provide complete and truthful information to the trustee, an officer of the court.
 
 See United States v. Jackson,
 
 836 F.2d 324, 329 (7th Cir.1987).
 

 [17]
 

 . Mr. Webster testified that he lied to the insurance company's attorney; that he backdated all the stock certificates; and that he "could have” written on the bankruptcy schedules that there was a transfer of real property (item 12B), but that “would have been duplicitous [sic].” R.67 at 69-70. He stated that Schommer owned all the shares in the Hitching Post Bar, Inc., when the fire occurred in May 1992, but that he, Mr. Webster, created the second two certificates — 50 shares owned by Deiss and 450 owned by Deiss but pledged to Schommer as security — in September 1992. Mr. Webster had created those two certificates to reconfigure the ownership of the incorporated Bar. Mr. Webster explained that he was "correcting or actually transferring that stock to the way that [Deiss] wanted it transferred and he had I think simply neglected to get it done before that time."
 
 Id.
 
 at 85.
 

 [18]
 

 .
 
 See Michalek,
 
 54 F.3d at 333;
 
 United States v. Mohammad,
 
 53 F.3d 1426, 1437-38 (7th Cir.1995);
 
 United States v. Messner,
 
 107 F.3d 1448, 1457 (10th Cir.1997);
 
 United States v. Welch,
 
 103 F.3d 906, 908 (9th Cir.1996) (per curiam) (discussing earlier cases);
 
 United States v. Cheek,
 
 69 F.3d 231, 233 (8th Cir.1995);
 
 United States v. Bellew,
 
 35 F.3d 518, 520-21 (11th Cir.1994) (per curiam);
 
 United States v. Lloyd,
 
 947 F.2d 339, 340 (8th Cir.1991) (per curiam).
 
 But cf. United States v. Shadduck,
 
 112 F.3d 523 (1st Cir.1997) (noting that a bankruptcy rule or official form is not a "judicial order” as used in § 2F 1.1 (b)(3)(B); holding that government failed to show that defendant violated prior order, decree or injunction; and declining to consider whether defendant violated a judicial “process”);
 
 United States v. Carrozzella,
 
 105 F.3d 796 (2d Cir.1997) (holding that § 2F1.1(b)(3)(B) does not require enhancement for filing false accounts with probate court because that conduct is "addressed elsewhere in the guidelines" as abuse of position of trust; and declining to reach question whether § 2F 1.1 (b)(3)(B) enhancement may be based on bankruptcy fraud involving concealment of assets).
 

 [19]
 

 . In its brief, at page 31, the government suggests that this court has been lenient in enforcing
 
 Dunnigans
 
 requirement that clear findings of perjury be made by the district court and has accepted "fairly rudimentary observations”'by various district courts. We have examined with care the cases cited by the government and con-elude that the district courts in those cases stated findings far more probative of perjury than the finding we have before us in this case.