**UNITED STATES of America, Plaintiff–Appellee, Cross–Appellant,**

v.

**Edward L. BUCHANNAN, Jr., Defendant–Appellant, Cross–Appellee,**

and

**Isaac Lee, Defendant–Appellant.**

**Nos. 96–1198, 96–1233, 96–1426.**

United States Court of Appeals,
Seventh Circuit.

Argued Dec. 13, 1996.

Decided May 27, 1997.

Ralph M. Friederich (argued), James Porter, Office of the United States Attorney, Criminal Division, Fairview Heights, IL, for Plaintiff–Appellee.

Bradley S. Dede (argued), Clayton, MO, for Isaac Lee.

Edwin R. McCullough (argued), Chicago, IL, William D. Stiehl, Jr., Wimmer & Stiehl, Belleville, IL, for Edward L. Buchannan, Jr.

Before CUDAHY, RIPPLE and KANNE, Circuit Judges.

CUDAHY, Circuit Judge.

Edward Buchannan and Isaac Lee sold cocaine to a police informant. Several weeks later, the duo attempted to sell wax that they claimed was cocaine to an undercover DEA agent. When the agent refused to buy the wax, Buchannan assaulted him with a triple-beam scale and stole the agent's marked money. Ultimately, both men were charged with, and convicted of, distribution of cocaine, conspiracy to distribute cocaine, assaulting a federal officer and robbery of federal funds. Each now appeals and the government cross-appeals.

Buchannan claims that the district court improperly refused to instruct the jury on his theory of defense, that there was insufficient evidence to sustain his conviction for assault with a deadly weapon and that he was improperly sentenced. Lee claims that he should have been granted a judgment of acquittal on the assault and robbery charges. The government cross-appeals arguing that Buchannan's case must be remanded for re-sentencing because the district court failed to make sufficient factual findings to support the sentence.

I. Factual Background

Early in 1994, Edward Buchannan was residing in the Jackson County Jail, for parole violations, when he was approached by Timothy Legere, an officer with the Murphysboro, Illinois, police force. Legere approached Buchannan as a possible source of information about drug dealers in and around Murphysboro and met with Buchannan at least twice while he was in custody. At these meetings, Buchannan gave Legere some information about himself and his drug contacts, and Legere arranged for Buchannan to be released from custody.

After his release, Buchannan continued to meet with Legere and an ATF agent to discuss Buchannan's potential role as a police informant. At these meetings, Buchannan was cultivated as a possible undercover informant. Legere told Buchannan that he should stay in constant contact with the police regarding his whereabouts and his knowledge of drug activities and that they would contact him if they needed him to participate in an undercover drug purchase or sale. After a short while, Buchannan stopped contacting the police and, because the police ultimately determined that Buchannan was too violent to participate in undercover operations, they never contacted him again.

At about the same time, DEA agent Larry Gregory was making arrangements for Terrel Kempfer to act as an informant and assist in conducting an undercover drug sting. Kempfer advised Agent Gregory that he could arrange a drug purchase from Edward Buchannan and Isaac Lee. Kempfer was willing to help Agent Gregory because the pair allegedly cheated him in earlier transactions. Thus, Kempfer agreed to wear a concealed microphone and to participate in a controlled drug purchase in Carbondale, Illinois, on

March 11, 1994. After meeting Buchannan and Lee at a K–Mart parking lot in Carbondale and following them to a nearby Kentucky Fried Chicken, Kempfer exchanged DEA funds for 11 rocks of crack cocaine. A lab analysis determined that the purchased substance consisted of 6.5 ounces of cocaine base.

Kempfer arranged for a second purchase from Lee on May 3, 1994. At this meeting, Agent Gregory, acting undercover, assumed the role of purchaser. Kempfer and Agent Gregory met Buchannan and Lee at the Martin Food Store in Murphysboro. After a half-hour wait, Buchannan and Lee said they were ready but that they needed to travel to a remote location in order to consummate the deal. To that end, Buchannan and Gregory drove Kempfer's truck to a nearby apartment building. Kempfer and Lee followed in Lee's car. Because Agent Gregory refused to go beyond the entryway of the building with Buchannan, the deal took place in the foyer of the building, with Kempfer and Lee waiting outside in Lee's car.

Agent Gregory showed the money to Buchannan, and Buchannan presented him with a package. Gregory weighed the package on a triple beam scale that he had brought into the building. When Gregory refused to purchase the package because it weighed only 19 grams instead of the agreed upon 1 ounce (28 grams), Buchannan took the package outside to Lee's car and returned with a "second" package that was in all respects similar to the first. Because the second package weighed the same as the first, Agent Gregory again refused to complete the deal. Buchannan became infuriated and began kicking and hitting Gregory. When Gregory refused to give Buchannan the money, Buchannan accused Gregory of being a cop and began hitting him with the scale.

Outside, Lee told Kempfer to go into the building to see what was taking so long. After Kempfer went inside, Lee left. When Kempfer entered the apartment building and saw Buchannan hitting Agent Gregory with the scale, he urged Agent Gregory to give Buchannan the money. Eventually, Gregory gave Buchannan $980 in marked DEA funds. As soon as he received the money, Buchan-

nan threw down the scale and left the package, which was later determined to contain wax, not cocaine.

When Buchannan was arrested later the same day and Lee two days later, each was carrying a portion of the marked DEA money. Both were indicted and ultimately convicted on four counts: conspiracy to distribute cocaine, distribution of cocaine, assaulting a federal officer and robbery of federal funds.

On appeal, Buchannan argues that he was denied a fair trial because the trial court refused to instruct the jury on his theory of defense, namely, that he held a reasonable belief that he was acting on behalf of the government during the drug sale to Kempfer and with respect to the drug conspiracy. Additionally, while he admitted assaulting and robbing Gregory, he argues that his assault conviction should be vacated because there was insufficient evidence that he used a dangerous or deadly weapon. Finally, he argues that the sentencing enhancement for obstruction of justice must be reversed because the district court failed to make a specific finding that he committed perjury.

Lee does not challenge his conviction under the drug counts. Rather, he claims that the district court erred when it refused to grant his motion for judgment of acquittal on the charges of assault and robbery of a federal officer. Lee argues that he cannot be held vicariously liable for Buchannan's attack and robbery because it was not reasonably foreseeable and it was outside the scope of the conspiracy.

The government cross-appeals, asking us to vacate Buchannan's sentence and to remand the case for resentencing because the district court failed to make the required factual findings at Buchannan's sentencing hearing regarding the amount and type of drugs attributable to Buchannan.

We affirm the convictions, but vacate Buchannan's sentence and remand his case for resentencing.

## II. U.S. v. Buchannan

On appeal, Buchannan argues that the district court's refusal to give his proffered jury

instruction deprived him of a fair trial with respect to the drug charges. He also contends that there was insufficient evidence to support his assault conviction. Finally, he urges reversal of his sentencing enhancement for obstruction of justice because the judge failed to make an explicit finding that he committed perjury. The government cross-appeals Buchannan's sentence seeking remand for findings of the amount and type of drugs that Buchannan handled.

### A. Jury Instructions

Buchannan testified that he was only involved in the transaction with Lee and Kempfer on March 11 because he was attempting to gather information for Officer Legere. The district court rejected each of the three instructions offered by Buchannan that related to this testimony.[1] As a result, Buchannan appeals his conviction claiming that he was entitled to have his theory of defense presented to the jury as a potential ground for acquittal.

A defendant is entitled to an instruction on his theory of defense if: (1) he proposes a correct statement of the law, (2) the theory is supported by the evidence, (3) the theory is not otherwise part of the charge and (4) the failure to include an instruction on the defendant's theory of defense would deny him a fair trial. See, e.g., United States v. Neville, 82 F.3d 750, 761 (7th Cir.1996) (citing United States v. Howell, 37 F.3d 1197, 1203 (7th Cir.1994)), cert. denied, — U.S. ——, 117 S.Ct. 249, 136 L.Ed.2d 177 (1996). If, viewing the jury charge as a whole, the defendant can show that these four conditions applied, the failure to give the instruction is reversible error. See United States v. Edwards, 36 F.3d 639, 645–46 (7th Cir.1994).

Buchannan's proposed Instruction No. 1 held the defendant to a purely subjective standard: if the jury found that Buchannan believed that he was acting as a govern-

ment agent, they should find him not guilty regardless of how unreasonable that belief may have been. The trial court properly refused to give this instruction because it misstates the law. The defendant's mistaken belief that he is acting as a government agent only shields the defendant from prosecution if the defendant's belief is objectively reasonable. See, e.g., Neville, 82 F.3d at 761; United States v. Howell, 37 F.3d 1197, 1204 (7th Cir.1994) (defendant's reliance must be actual and reasonable). However, proposed Instructions No. 2 and No. 3 accurately set forth the requirements for his theory of defense, namely that he actually believed that he was a government agent and that his belief was objectively reasonable. Thus, these instructions meet the requirement of correctly stating the law.

The defendant's theory was not part of the charge given to the jury. Thus, if Buchannan's theory were sufficiently supported by the evidence, it would have been error for the district court to refuse to so instruct the jury. Rejecting a defendant's proffered jury instruction because it has insufficient factual support is similar to ruling as a matter of law that the defendant's theory is insufficient. See United States v. Perez, 86 F.3d 735, 736 (7th Cir.1996). As noted, the defense's proposed Instructions Nos. 2 and 3 contain both a subjective and an objective element. Therefore, we must first determine whether a reasonable jury could conclude that Buchannan subjectively believed that he was acting as an undercover informant during the drug transaction between Lee and Kempfer. Second, we must determine whether a reasonable jury could conclude that this belief was objectively reasonable.

Although Buchannan testified that he considered himself to be acting as an informant, his actions did not reflect such a belief. Buchannan met with Officer Legere, and others, both before and after his release from jail to discuss acting as an informant. At each

---

1. Defendant's Instruction No. 1 provided: "If the defendant believed in good faith that he was acting properly, even if he was mistaken in that belief, then he could not act 'knowingly' as that term is defined in these instructions."

Defendant's Instruction No. 2 provided: "If you find that the defendant reasonably believed

that he was acting on behalf of a law enforcement agency at the time of the offense alleged in Count 1, you should find him not guilty of the offense alleged in Count 1."

Defendant's Instruction No. 3 was the same as Defendant's Instruction No. 2, except that it referred to Count 2.

meeting, Buchannan was told that an informant must introduce government agents to drug dealers and must stay in constant contact with government agents. Buchannan did not maintain contact with the officers, in any real sense, after he was released from jail. After he was released, he feigned cooperation because he assumed, that if Officer Legere could get him out of jail, Officer Legere could also put him back in jail. At one point, Buchannan told Legere that he was planning to make a large drug purchase with personal funds. Legere told Buchannan that he should not purchase any drugs with personal funds, and that he should not buy any drugs without authorization in advance. Legere told Buchannan that, were he to participate in a sting operation, government agents would accompany him and provide the money. Soon after Buchannan was released from jail, he ceased contacting Legere, stating that his phone calls made his associates suspicious.

At trial, Buchannan testified that he never wanted to be an informant and that he had told the police he would act as an informant only because he wanted Officer Legere to get him out of jail. Even so, Buchannan testified that he thought he was acting on behalf of the government when he rode in the car with Lee and Kempfer on March 11. Yet there is no evidence that Buchannan contacted Officer Legere or any other law enforcement official subsequent to his involvement in the Carbondale drug sale. Even after Buchannan was arrested for the assault on Agent Gregory on May 3, and until trial, he did not reveal anything about the March 11 drug deal in Carbondale. Since Kempfer had been the sole purchaser at the March 11 transaction, Buchannan did not know until he was charged that the police were involved. In fact, Buchannan chose not to reveal his knowledge of this earlier drug deal, and to claim protection as an informant, until his trial in connection with the May 3 incident. The only reasonable explanation for his failure to report to Officer Legere after the drug deal on March 11 is that he no longer

considered himself to be acting as an informant.

In light of his actions, no reasonable jury could conclude that Buchannan subjectively believed that he was an informant during this transaction. By the same token, Buchannan could not have reasonably believed that he was an informant. Therefore, the district court did not err in refusing to incorporate the defendant's theory of defense into the jury instructions.

### B. Assault with a Deadly or Dangerous Weapon

Buchannan admits assaulting Agent Gregory, but he denies using anything other than his hands and feet in the attack. Because Buchannan was convicted, we review the evidence in the light most favorable to the government.

■ Buchannan makes two arguments. First, he contends that the note sent out by the jury during its deliberations indicates that it did not believe Buchannan used the scale to assault Gregory.[2] Buchannan argues that this note shows that the jury was either mistaken or illogical when it announced its final verdict. Even if the note accurately reflected the jury's opinion when it was written, the jury is not precluded from changing its mind during its deliberations, and in fact it is encouraged to consider different positions as part of the deliberative process. Therefore, the government correctly concludes that this note is irrelevant.

■ Second, Buchannan presents a rather unpersuasive insufficiency of the evidence argument. He argues that no reasonable jury could conclude that he used a deadly or dangerous weapon—the scale—in his assault on Gregory. At trial, both Gregory and Kempfer testified that Buchannan hit Gregory with the scale. Additionally, the jury viewed photographs of Gregory's injuries. On the other hand, Buchannan testified that he did not hit Gregory with the scale. Instead, he claimed that he hit Gregory with his hands and threw the scale against the

2. During its deliberations, the jury sent a note to the judge which stated in part: "On Count 3, we are concerned that we are in agreement that

assault did take place, but we do not believe that the scale was used in the assault. Could you please clarify?"

wall. Conflicting testimony requires the jury to make credibility assessments. The jury weighed the evidence, assessed the credibility of the witnesses and returned a verdict that Buchannan did use a deadly or dangerous weapon in his assault of Gregory. Sufficient evidence was presented to support the jury's findings. Thus, this court will not disturb the verdict.

## C. Obstruction of Justice

■ At Buchannan's sentencing hearing, the district court imposed a two point sentencing enhancement for obstruction of justice. Buchannan argues that this enhancement must be vacated because the district court failed to make an explicit finding that Buchannan committed perjury. Upon a determination that the defendant committed perjury,[3] the court must enhance the sentence for obstruction of justice under the federal sentencing guidelines. U.S.S.G. § 3C1.1; *United States v. Dunnigan*, 507 U.S. 87, 113 S.Ct. 1111, 122 L.Ed.2d 445 (1993). In *Dunnigan*, the Supreme Court expressly noted that the sentencing enhancement is not automatic for every defendant who testifies in his own defense and is found guilty. *Id.* at 95, 113 S.Ct. at 1116–17. To minimize the tendency to apply the enhancement woodenly after a defendant testifies in his own defense, the Supreme Court stated that when the defendant objects to the enhancement, the district court should make separate findings sufficient to "establish a willful impediment to or obstruction of justice, or an attempt to do the same." *Id.* The *Dunnigan* Court went on to stress that, "it is preferable for a district court to address each element of the alleged perjury in a separate and clear finding." *Id.* However, the Court also recognized that the enhancement could be upheld on appeal so long as "the [district] court makes a finding of an obstruction of or impediment of justice that encompasses all of the factual predicates for a finding of perjury." *Id.*

Before *Dunnigan*, this court sometimes upheld perjury enhancements where the district court failed to make specific findings to support such an enhancement, but when the trial record clearly established that the jury must have determined that the defendant lied on the witness stand. *See, e.g., United States v. Lozoya–Morales*, 931 F.2d 1216, 1219–20 (7th Cir.1991); *United States v. Doubet*, 969 F.2d 341, 349 (7th Cir.1992). To the extent that these cases affirmed sentencing enhancements merely on the basis of a verdict that was inconsistent with the defendant's testimony, they are no longer authoritative after *Dunnigan*. Therefore, the government's argument urging us to affirm the sentencing enhancement because "the jury necessarily disbelieved Buchannan," is inadmissible after *Dunnigan*.

Here the district court failed to make specific findings regarding Buchannan's alleged perjury that would support the obstruction of justice enhancement. As we have noted, an enhancement for obstruction of justice cannot be upheld merely on the presumption that the jury disbelieved the defendant's testimony. Therefore, this case must be remanded for resentencing, at which time the district court can either provide the necessary findings or drop the enhancement.

## D. Buchannan's Base Offense Level

■ Buchannan's base offense level, for sentencing purposes, depends rather dramatically on whether he sold cocaine powder or cocaine base (crack). The district court accepted Buchannan's proffered base offense level of 32 in preference to the level 38 suggested by the government. The government argues that the sentence should be vacated because the district court failed to make the required factual findings to support its choice of offense level. *See United States v. Beler*, 20 F.3d 1428, 1432 (7th Cir.1994). The first paragraph of the police report that was prepared after Buchannan's arrest for parole violations, states that Buchannan admitted to selling one and one-half kilograms

---

**3.** The United States Supreme Court defined perjury as follows: "A witness testifying under oath or affirmation [commits perjury] if she gives false testimony concerning a material matter with the willful intent to provide false testimony, rather than as a result of confusion, mistake or faulty memory." *United States v. Dunnigan*, 507 U.S. 87, 94, 113 S.Ct. 1111, 1116, 122 L.Ed.2d 445 (1993).

of cocaine during the preceding two months. Additional paragraphs of the report reveal some of Buchannan's suppliers. All of the paragraphs that detail cocaine purchases or sales by Buchannan distinguish between crack cocaine and powder cocaine—except the first paragraph. Agent Smith, the agent who prepared the report, stated that Buchannan was referring to crack cocaine in the first paragraph. Buchannan claims that he was talking about one and one-half kilograms of powder cocaine. Buchannan further claims that he neither bought nor sold this cocaine; he was merely aware that it was coming into the area. Obviously, it makes a great deal of difference whom the district court credited.

The district court failed to make any express findings about the amount or type of cocaine that supported the defendant's sentence. Normally, we would remand the case for findings by the district court regarding the amount and type of drugs attributable to the defendant. *See, e.g., United States v. Acosta,* 85 F.3d 275, 281–83 (7th Cir.1996). We have, in rare cases, upheld a sentence where the district court's implicit findings seemed sufficient. *See United States v. McKinney,* 98 F.3d 974, 980–81 (7th Cir. 1996), *cert. denied,* —— U.S. ——, 117 S.Ct. 1119, 137 L.Ed.2d 319 (1997) (affirming the sentence despite a lack of express findings where it was clear from the sentencing transcript that the district court adopted the drug quantities in the presentence report); *United States v. DePriest,* 6 F.3d 1201, 1213 (7th Cir.1993) ("when a district court fails to make specific findings ... resentencing is not required in every case"). This is one of those rare cases where a lack of express findings does not mandate resentencing.

It is apparent from the transcript of the sentencing hearing that the court considered the presentence investigation report and Buchannan's testimony and ultimately concluded that the government had failed to carry

its burden of proof.[4] Thus, the court properly erred on the side of caution and adopted the defendant's version of the amount and type of drugs involved. *See Acosta,* 85 F.3d at 282.

 It is always preferable for the district court to expressly state the amount and quantity of drugs upon which the defendant's sentence is based. It is the rare case where the district court's implicit findings are sufficiently obvious and the factual basis sufficiently adequate that we will uphold a sentence absent express factual findings.

### III. U.S. v. Lee

At the close of the government's evidence, Lee moved for judgment of acquittal on the robbery and assault charges. His motion was denied and he was convicted.

 Because Lee did not actively participate in, or even witness, the assault and robbery, he does not believe that he can be convicted of those crimes. He does not otherwise challenge his conviction. As a member of the conspiracy, however, Lee, under appropriate circumstances, can be convicted of crimes committed by his co-conspirators. Under the Pinkerton doctrine, a defendant can be convicted of substantive offenses committed by a co-conspirator if the government proves beyond a reasonable doubt that: (1) the essential elements of the substantive offense were established, (2) the defendant was a member of the conspiracy at the time the substantive offense was committed and (3) the substantive offense was committed in furtherance of or was a natural consequence of the conspiracy and was reasonably foreseeable by the defendant. *Pinkerton v. United States,* 328 U.S. 640, 645–48, 66 S.Ct. 1180, 1183–85, 90 L.Ed. 1489 (1946); *see also United States v. Rodriguez,* 67 F.3d 1312, 1324 (7th Cir.1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 1582, 134 L.Ed.2d 679 (1996).

---

4. At the sentencing hearing, the judge stated: "As to the [drug counts], I am once again faced with the proposition of amounts determining relevant conduct. We are dealing with amounts extrapolated from many unreliable people.... I'm talking about the people who gave the statements. The amount of powder, the amount of crack, we all know the difference in the sentences in all of those circumstances. The court finds the total offense level as to the [drug counts] to be 34, that is using the defendant's amount of 32 and adding 2 points for the obstruction."

The essential elements of the assault and robbery have been established by Buchannan's conviction and by our affirmance of that conviction. Additionally, Lee does not deny that he was a member of the conspiracy during the relevant time period.

Thus, the only disputed element in the question is whether the assault and robbery was committed "in furtherance of the conspiracy and [was] reasonably foreseeable as a necessary or natural consequence of the conspiracy." *Rodriguez*, 67 F.3d at 1324 (emphasis added). Lee did not address the *Pinkerton* doctrine in his brief. However, at oral argument, his attorney conceded that the *Pinkerton* doctrine was applicable, and that the assault and robbery was in furtherance of or was a natural consequence of the conspiracy. Therefore, the issue distills to whether Buchannan's assault and robbery was reasonably foreseeable to Lee. Lee would have us believe that Buchannan's actions were singular, bizarre and completely unforeseeable, particularly in light of the fact that neither Lee nor Buchannan brought a weapon to the scene. He alleges that the attack would not have occurred without Gregory's refusal to purchase the package of wax.

Alternatively, the government contends that Seventh Circuit precedent establishes that drug deals are inherently violent. *See, e.g., Edwards*, 36 F.3d at 644. The fact that Buchannan and Lee were trying to sell wax that they represented as cocaine increased the likelihood of violence. Finally, Lee must have realized that a conflict was, at the very least, possible when Buchannan returned to the car for the "second" package.

Gregory testified that Buchannan leaned into the car in which Lee was sitting when he went to retrieve the second package. The natural inference is that Buchannan explained to Lee why the deal was still incomplete. At that time, Lee could have attempted to persuade Buchannan to abandon the deal, but he did not. Lee and Buchannan took Gregory to a secluded location to complete the transaction, thus making violence more feasible. Kempfer, and another cooperating witness, Dee Ann Hudson, testified that Lee and Buchannan had "ripped off" other customers. If violence is a foreseeable consequence of "fair" drug deals, then violence may be exponentially more foreseeable in drug deals where the seller attempts to "rip off" the buyer.

The instruction given by the district court clearly and accurately presented the elements of the *Pinkerton* doctrine to the jury. Since there is sufficient evidence to support co-conspirator liability, Lee's conviction must be affirmed.

## IV. Conclusion

Because there was insufficient evidence to support Buchannan's theory of defense, the district court did not err in refusing to so instruct the jury. Although Buchannan claimed that he did not use a scale, or any other weapon, in his attack on Agent Gregory, sufficient evidence exists to support the jury's contrary verdict. With respect to Buchannan's sentence, while it is always preferable for the district court to make explicit findings at a sentencing hearing, a review of the transcript in this case reveals that the judge clearly adopted the defendant's version of the type and amounts of drugs attributable to the defendant. Therefore, we need not remand for further findings on the drug counts. However, we are compelled to vacate and remand the obstruction of justice sentencing enhancement imposed on Buchannan because the court failed to make a finding that Buchannan committed perjury. Finally, we hold that, despite Lee's argument that Buchannan's actions were unforeseeable, there was adequate evidence of coconspirator liability to support Lee's conviction for assault and robbery.

We therefore AFFIRM the convictions of Lee and Buchannan, but VACATE Buchannan's sentence and REMAND for resentencing.