**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Emery Lee GAGE, Defendant–Appellant.**

No. 98–3679.

United States Court of Appeals, Seventh Circuit.

Argued Feb. 26, 1999.

Decided July 8, 1999.

Darilynn J. Knauss, Thomas A. Keith (argued), Office of the United States Attorney, Peoria, IL, for Plaintiff–Appellee.

George F. Taseff (argued), Office of the Federal Public Defender, Peoria, IL, for Defendant–Appellant.

Before POSNER, Chief Judge, and CUDAHY and ROVNER, Circuit Judges.

CUDAHY, Circuit Judge.

On March 6, 1998, Emery Lee Gage used a written note containing a demand for money to rob Bank One, a federally insured financial institution in Peoria, Illinois. He later confessed to the robbery, claiming that the note simply said "put the money in the bag." The government contended that it could prove that the note included the words "I have a gun." The district court's resolution of this dispute about what the note said led to this appeal, in which Gage challenges the court's application of the Sentencing Guidelines in two instances. We affirm as to one, but reverse as to the other and therefore remand the case to the district court for re-sentencing.

After the FBI arrested and interrogated Gage on March 18, 1998, he confessed to the robbery in a hand-written statement, which described the events of March 6. By Gage's account, on the afternoon of the robbery, he was coming down from a cocaine high and asked a friend for a ride to a bank so that he could withdraw money from an ATM. When they got to the bank, Gage picked up an old envelope from the floor of the car, scrawled "put the money in the bag" on the face of the envelope and walked inside. He handed the note to the teller, grabbed the bag which had been filled with about $1566 and walked out. Gage then bought and used more cocaine and went to a bar to drink. Gage wrote that he was wearing a hat and sunglasses but that he could not remember what his shirt looked like. He specifically denied carrying a gun during the robbery. His handwritten confession also included expressions of regret and remorse for his actions and a claim that his drug addiction made him commit the robbery. Gage pleaded not guilty to violating 18 U.S.C. § 2113(a)(1).

Gage later changed his mind, deciding to plead guilty. At the change of plea hearing on May 20, 1998, the district court asked Gage to explain the factual basis for his plea of guilt. Gage retold substantially the same story he penned for the FBI. At the conclusion of Gage's colloquy, the court asked Gage to repeat what he had written on the note. Gage stuck with his story: the note said only "put the money in the bag," he recited. He further denied that he had indicated in any way that he was carrying a weapon.

The government then provided its own factual version of the guilty plea, claiming that it could prove beyond a reasonable doubt that the note included the phrase "I have a gun." The government relied on an FBI interview with the bank teller, Khrist-

ie Lee Stanton, conducted on March 23, 1998, some two weeks after the robbery.[1] Stanton told the FBI that she was very upset and did "not remember specifically what was on the note;" it "may have said something to the effect that 'I have a gun' and possibly, 'Put money in the bag.'" In light of this evidence, the court asked Gage if the government's version, particularly regarding the note's content, was accurate. Gage stayed the course he had set, again disputing that the note included "I have a gun." Satisfied that the plea had a basis in fact (without, at that time, picking between the two versions), the court referred Gage to the probation office for a presentence investigation and set the matter for sentencing.

The presentence report (PSR) made three recommendations relating to the dispute over the content of the stickup note. First, it recommended that Gage receive a two-level enhancement under U.S.S.G. § 2B3.1(b)(2)(F) because the note—which, the PSR concluded, had indicated that Gage had a gun—constituted a threat of death. Second, it recommended that the district court increase Gage's offense level an additional two points under § 3C1.1 for obstruction of justice because Gage had denied that the note indicated that he was carrying a gun. Finally, the PSR recommended that Gage be denied any offense-level reduction for acceptance of responsibility pursuant to § 3E1.1. Gage objected to each of these recommendations, arguing that, given the consistency of his story and the shakiness of Stanton's recollection, the court should find that the note did not mention a gun.

At the sentencing hearing on October 16, 1998, the district court considered Gage's objections to each of the PSR recommendations. The ultimate issue—as Gage, the government and the court each acknowledged—was whether the note included a reference to a gun. Bank teller Stanton testified for the government. She now claimed that she was "almost one hundred per cent sure" that the note said "I have a gun." She testified that she thereafter went numb with fear. This was apparently enough for the district court. It found that:

> the government has proved by a preponderance of the evidence that the defendant did tender to the teller at the bank a note which contained the statement that he had a gun. I'm persuaded that this was on the note for two reasons. One, there certainly is evidence that the defendant was under the influence of drugs at the time of this robbery. And by his own admission he was pretty far zonked out, and I doubt very much if he could remember accurately everything that happened or what he did. I'm also persuaded that Miss Stanton ... was positive about the fact that the note said "I have a gun"....

Sent. Tr. at 25. The parties then continued to argue about the application of the contested guidelines following this finding of fact.[2] Gage focused on the obstruction of justice guideline, § 3C1.1, arguing that whether or not the note indicated that he had a gun was immaterial because he did not have the culpable state of mind necessary for the court to impose the enhancement. In response to this argument, the district court made the following observations:

> And I think there's reason to believe [Gage] did not testify truthfully when he said "I did not mention a gun in that note," because if he didn't remember he should have said truthfully to this court, I don't really know what that said. I was high. But he didn't say that. He said it did not contain information about a gun. I don't think that was truthful.

1. The FBI report is dated March 23, 1993. This is plainly a typographical error.

2. Gage no longer contested the applicability of § 2B3.1(b)(2)(F), conceding that *United States v. Carbaugh*, 141 F.3d 791 (7th Cir.), *cert. denied*, —— U.S. ——, 119 S.Ct. 436, 142 L.Ed.2d 355 (1998), disposed of the issue. *See* Sent. Tr. at 25.

And why [*sic*] I grant you he might not have said that to obstruct justice, but he still did not truthfully testify, if I'm right in my belief that he didn't really know and remember what he put on that note. He should have truthfully told the Court that.

Sent. Tr. at 38. The district court later commented on Gage's denial of writing "I have a gun" on the note: "That wasn't a conscious lie. The lie was at the plea hearing when he acted as if he knew. When he told me, I did not put anything on the about the—anything on the note about the gun." Sent. Tr. at 40. And in conclusion the district court stated: "I don't think the defendant's been truthful. And I think he wilfully misrepresented to the Court what was in that note, because I don't think he really knows what was in that note, but stated as if he did." Sent. Tr. at 51. Accordingly, the court denied all three of Gage's objections to the PSR and sentenced him to 92 months in prison. Gage appeals.

▆▆▆ Gage first argues that the district court erred by increasing his offense level by two points pursuant to § 3C1.1. A court can enhance a defendant's offense level under § 3C1.1 "if the defendant wilfully obstructed or impeded . . . the administration of justice during the course of the investigation, prosecution, or sentencing. . . ." Perjury can be the basis for a § 3C1.1 increase, *see, e.g., United States v. Hach,* 162 F.3d 937, 949 (7th Cir. 1998), *cert. denied,* —— U.S. ——, 119 S.Ct. 1586, 143 L.Ed.2d 680 (1999), but not every instance of false testimony under oath warrants the enhancement. *See United States v. Dunnigan,* 507 U.S. 87, 94–95, 113 S.Ct. 1111, 122 L.Ed.2d 445 (1993); *see also* U.S.S.G. § 3C1.1 comment. (n.2). In cases of alleged perjury, the district court "must review the evidence and make independent findings necessary to establish a willful impediment to, or obstruction of, justice, or an attempt to do the same. . . ." *Dunnigan,* 507 U.S. at 95, 113 S.Ct. 1111. The court must also find that a defendant testi-fied untruthfully with the specific intent to obstruct justice rather than as a result of confusion, mistake or faulty memory. *See id.* at 94, 113 S.Ct. 1111; *United States v. Ewing,* 129 F.3d 430, 434 (7th Cir.1997) ("Section 3C1.1 requires *specific intent* to obstruct justice.") (emphasis added); *see also* U.S.S.G. § 3C1.1 comment. (n.2).

▆▆▆ Gage argues here, as he did below, that the district court failed to follow the *Dunnigan* directives. Specifically, Gage contends that the district court made no findings regarding his intent to obstruct justice. As required by *Dunnigan,* we review *de novo* whether the district court made the appropriate findings with respect to Gage's alleged obstruction. *See United States v. Bonilla–Comacho,* 121 F.3d 287, 293 (7th Cir.1997). As to the district court's conclusion that Gage committed perjury, we review the factual findings underlying this determination for clear error. *See, e.g., United States v. Webster,* 125 F.3d 1024, 1037 (7th Cir.1997), *cert. denied,* —— U.S. ——, 118 S.Ct. 698, 139 L.Ed.2d 642 (1998).

The district court was clear that it did not base its application of § 3C1.1 on the substance of the dispute about the content of the note. Although the court did not believe Gage's story that the note said only "put the money in the bag"—it believed the teller's story—it did not think that Gage had intentionally lied about what the note said. Rather, the court found that Gage's account of events had been untruthful because, on account of his impaired state (he was high) during the bank robbery, he was not able to accurately remember what he had written. "[H]e was pretty far zonked out, and I doubt very much if he could remember accurately everything that happened or what he did," the district court found. Sent. Tr. at 25.

This constitutes an explicit finding that Gage's false testimony regarding the note's content resulted from faulty memory, not an intent to impede justice, and was therefore beyond the reach of

§ 3C1.1. The record supports the district court's conclusion that Gage was high when he robbed the bank. In his hand-written confession, he stated that at about noon that day he shot-up with an 8–ball of cocaine and that by 2:00 p.m. that after-noon he was "jonsin [sic] pretty hard."[3] He also wrote: "I don't believe that I would have done this if I wasn't jonsin [sic] so hard" and "I had to have the dope or I would be sick." The record is less clear about how Gage's impaired state affected his ability to accurately remember details of the robbery. In the hand-written con-fession, Gage is clear about the things he was not able to remember; for example, he wrote that he could not recall what kind of shirt he wore during the robbery. He expressed no such uncertainty about what the note said. Nonetheless, the district court heard Gage recite his version of events several different times and was in a better position to judge the accuracy of his memory. *See, e.g., United States v. McClellan,* 165 F.3d 535, 552 (7th Cir.), *cert. denied,* — U.S. —, 119 S.Ct. 1512, 143 L.Ed.2d 663 (1999) (this court rarely disturbs sentencing decisions based on credibility or reliability determinations of live witness testimony). We cannot say that the district court's conclusion that Gage was unable to accurately recall all the details of the bank robbery was clearly erroneous.

■■ Instead, the district court based the imposition of the § 3C1.1 enhancement on Gage's misrepresentation about the state of his memory. The court found that Gage lied when he testified that he re-membered what the note said when he really did not know exactly what he had written on that envelope: "The lie was at the plea hearing when he acted as if he knew [what the note said.]" Sent. Tr. at 40. "[I]f he didn't remember he should have said truthfully to this court, I don't really know what [the note] said. I was high. But he didn't say that," the district court further found. *Id.* at 38. Again, we cannot conclude that this factual finding—that Gage's failure to indicate the limits of his memory constitutes a lie—was clearly erroneous.

As a general matter, a defendant can perjure himself about the state or accuracy of his memory, and this perjury can be the basis for an enhancement under § 3C1.1. *See United States v. Brimley,* 148 F.3d 819, 823–24 (7th Cir.1998). Denying that you remember something when you do, or, conversely, representing that you recall an event clearly when you do not, can as easily impede the administration of justice as a simple lie about a material fact. A lie is a lie, whether explicit or implicit. So, in this case, the basis for the district court's enhancement was legally sound. But in order to impose the obstruction of justice enhancement for perjury, the district court must make explicit and independent find-ings that Gage perpetrated the lie—even the implicit lie about the accuracy of his memory[4]—with the *specific intent* to ob-struct justice. *See Dunnigan,* 507 U.S. at

---

3. To "jones" means to have a "habitual crav-ing" and commonly refers to drug addiction. *See* RANDOM HOUSE HISTORICAL DICTIONARY OF SLANG (vol.2) 312–13 (1994); *see also* GENEVA SMITHERMAN, BLACK TALK: WORDS AND PHRASES FROM THE HOOD TO AMEN CORNER 147 (1994) ("A strong, overwhelming desire for anything you indulge in or acquire and never get enough of.... Originally referred to addiction to heroin or cocaine."); U.S. DEPT. OF JUSTICE, DRUGS AND CRIME DATA: STREET TERMS: DRUGS AND THE DRUG TRADE 24 (Aug.1993) ("need for drugs").

4. Gage's lie would have been explicit if he had volunteered that he "clearly remembered

..." or if he had answered, in response to a question from the court about his memory, that he clearly recalled the details of the rob-bery. Unless otherwise qualified, every state-ment includes an implicit representation that the declaration is supported by clear memory. We say "implicit lie" here only because Gage did not so qualify his statements; nor does the record indicate that the district court di-rectly questioned him about his ability to re-member. That said, an implicit lie is as detri-mental to the administration of justice as an explicit one and, as we have said, can form the basis for an obstruction enhancement.

95, 113 S.Ct. 1111; *Ewing,* 129 F.3d at 434; *see also Webster,* 125 F.3d at 1037–38. "On the basis of the *Dunnigan* directives, we have remanded cases in which the district court failed to make [such] specific findings...." *Id.* at 1037 (citing, as one example, *United States v. Buchannan,* 115 F.3d 445, 453 (7th Cir.1997)). The only finding relating to Gage's intent concerns his misrepresentation about the content of the note, rather than about the content or quality of his memory. The district court observed that Gage *"might not have said that [the note said only 'put the money in the bag'] to obstruct justice,* but he still did not truthfully testify, if I'm right in my belief that he didn't really know and remember what he put on that note. He should have truthfully told the Court that." Sent. Tr. at 38 (emphasis added). If, as appears, the district court based the obstruction enhancement on Gage's implicit lie about what he could remember, then it must, with "more specificity than is present here," make a factual finding that Gage told the lie intending to obstruct justice. *Webster,* 125 F.3d at 1038; *see also Ewing,* 129 F.3d at 434. The record contains no such factual finding. We therefore conclude that the district court failed to state with adequate clarity the factual basis for its conclusion that Gage deserved the enhancement.[5] Accordingly, we remand the case to the district court for re-sentencing, "at which time the district court can either provide the necessary findings or drop the enhancement." *Buchannan,* 115 F.3d at 451.

Gage's second challenge is more easily disposed of. He objects to the district court's denial of his request for a two-point offense-level reduction under § 3E1.1(a), which permits such an adjust-ment "[i]f the defendant clearly demonstrates acceptance of responsibility for his offense...." A defendant carries the burden of showing entitlement to this reduction, *see, e.g., Ewing,* 129 F.3d at 435, and we review a district court's decision to deny it for clear error. *See United States v. Wetwattana,* 94 F.3d 280, 285 (7th Cir. 1996). Gage argues that his timely guilty plea together with his sincere remorse is enough to warrant the reduction. We have consistently rejected this argument. *See, e.g., United States v. Kamoga,* 177 F.3d 617, 621–22 (7th Cir.1999). Further, given the district court's conclusion that Gage made a false representation (even if implicit), it is difficult for us to conclude that the court's application of this guideline was clearly erroneous. The district court was entitled to conclude that Gage's failure to come clean about the limits of his memory was inconsistent with a full acceptance of responsibility. *See* U.S.S.G. § 3E1.1 comment. (n.1(a)).

Thus, we AFFIRM the district court's denial of the offense-level reduction under § 3E1.1, but REVERSE the district court's imposition of an enhancement under § 3C1.1 and REMAND the case for re-sentencing consistent with this opinion.

POSNER, Chief Judge, concurring.

I write separately to draw the attention of bench and bar to a latent tension in the case law on obstruction of justice. The majority opinion states that the guideline for increasing the length of a federal sentence because of the defendant's obstruction of justice, U.S.S.G. § 3C1.1, requires proof of the defendant's intent to obstruct justice. The statement is supported by a

[5]. We also note that this conclusion—that district courts are required to make explicit findings about a defendant's specific intent to obstruct justice—follows from the Sentencing Commission's inclusion of the "faulty memory" exception to the obstruction enhancement in cases of perjury. *See* U.S.S.G. § 3C1.1 comment. (n.2). In any case in which a district court found that a defendant's perjury resulted from faulty memory, absent a requirement that the court find a specific intent to obstruct, the exception would be rendered a nullity because the court could impose the obstruction enhancement for the implicit lie about the state of the defendant's memory. We decline to read the "faulty memory" exception out of the Guidelines.

large number of cases (many in this circuit) that interpret the word "willfully" as it appears in the guideline to require proof of specific intent to obstruct justice. E.g., *United States v. Ewing*, 129 F.3d 430, 434 (7th Cir.1997); *United States v. Henderson*, 58 F.3d 1145, 1153 (7th Cir. 1995); *United States v. Teta*, 918 F.2d 1329, 1333–34 (7th Cir.1990); *United States v. Greer*, 158 F.3d 228, 239 (5th Cir.1998); *United States v. Cassiliano*, 137 F.3d 742, 747 (2d Cir.1998); *United States v. Draper*, 996 F.2d 982, 984 (9th Cir.1993); *United States v. Gardiner*, 931 F.2d 33, 35 (10th Cir.1991). The District of Columbia Circuit, however, has come out the other way. *United States v. Taylor*, 997 F.2d 1551, 1560 (D.C.Cir.1993). And some of the cases I have cited, such as *Cassiliano*, flinch, and hold that "inherently obstructive" behavior, such as not showing up for sentencing, need not be shown to have been intended to obstruct justice. 137 F.3d at 747.

Above all, the *Ewing* line of cases is in conflict with the doctrine of *United States v. Neiswender*, 590 F.2d 1269 (4th Cir. 1979); see Joseph V. De Marco, Note, "A Funny Thing Happened on the Way to the Courthouse: Mens Rea, Document Destruction, and the Federal Obstruction of Justice Statute," 67 *N.Y.U. L.Rev.* 570 (1992), which holds that specific intent is *not* required for conviction under the catchall federal obstruction of justice statute, 18 U.S.C. § 1503; see also *United States v. Brooks*, 111 F.3d 365, 372 (4th Cir.1997). Our court adopted the *Neiswender* doctrine in *United States v. Machi*, 811 F.2d 991, 998–99 (7th Cir.1987), and applied it in *United States v. Bucey*, 876 F.2d 1297, 1314 (7th Cir.1989). Other courts have as well. *United States v. Atkin*, 107 F.3d 1213, 1219 (6th Cir.1997); *United States v. Moree*, 897 F.2d 1329, 1333 (5th Cir.1990); *United States v. Silverman*, 745 F.2d 1386, 1396 (11th Cir. 1984); *United States v. Buffalano*, 727 F.2d 50, 53–54 (2d Cir.1984). No court has rejected it, and though one can find language in some cases that is inconsistent with it, see, e.g., *United States v. Petzold*, 788 F.2d 1478, 1485 (11th Cir.1986); *United States v. Rasheed*, 663 F.2d 843, 852 (9th Cir.1981), that language may well be inadvertent—clearly so in *Petzold*, in light of the same court's decision in *Silverman* and its approving citation of *Buffalano*. One court even believes that the Supreme Court endorsed *Neiswender* (without citing it) in *United States v. Aguilar*, 515 U.S. 593, 115 S.Ct. 2357, 132 L.Ed.2d 520 (1995). *United States v. Brooks, supra*, 111 F.3d at 372. And another believes that the Court endorsed it more than a century ago, in *Pettibone v. United States*, 148 U.S. 197, 206–07, 13 S.Ct. 542, 37 L.Ed. 419 (1893). *United States v. Buffalano, supra*, 727 F.2d at 53–54. These readings are plausible; both *Aguilar* and *Pettibone* make obstructive conduct culpable if the obstruction was the natural and probable consequence of the conduct. It need not have been the intended consequence. And although the terminology of section 1503 and of the guideline provision is somewhat different—the former requiring that the defendant do something "corruptly" to obstruct justice and the latter that he do it "willfully"—*Neiswender* is consistent or inconsistent with either formulation.

There is nothing radical about *Neiswender*. Deliberately to do something that one knows will have a particular result is often in the criminal law enough to establish the requisite intention to bring about that result. *United States v. United States Gypsum Co.*, 438 U.S. 422, 444–46, 98 S.Ct. 2864, 57 L.Ed.2d 854 (1978); 1 Wayne R. LaFave & Austin W. Scott, Jr., *Substantive Criminal Law* § 3.5(a)-(c), pp. 303–311 (1986). Intention and desire are not synonyms. If you plant a bomb in a plane desiring only to kill the passenger whose heir you are, you are guilty of first-degree murder (deliberate, premeditated) of the other passengers who die in the crash as well, even though you didn't desire their death. You knew that the likely effect of your act would be their death, and

that is enough. *Pettibone v. United States, supra,* 148 U.S. at 207, 13 S.Ct. 542; *United States v. Aguilar, supra,* 515 U.S. at 599, 115 S.Ct. 2357. Transposed to the obstruction of justice context (both the *Pettibone* case and the *Aguilar* case are obstruction cases), this reasoning implies that if you killed a potential witness against you not because you wanted to prevent his testifying but because you were furious at his disloyalty, you would still be guilty of obstruction of justice, because you would know that a consequence of your act would be to prevent him from testifying, even though that was not your objective. Why should more be required when obstruction of justice is invoked as a basis for a sentencing enhancement rather than charged as a separate crime?

In short, I don't see how *Neiswender* can coexist with the *Ewing* line. Coexistence leads to the paradox that it is easier to convict a person of obstruction of justice than to enhance his sentence because he obstructed justice in the investigation or prosecution that led up to his conviction. It leads to the further paradox that "willfully" is made to require more proof than "corruptly," though the latter connotes the higher degree of culpability. *United States v. Gatling,* 96 F.3d 1511, 1522 (D.C.Cir.1996). I say this with some confidence while granting that the term "willfully" does not have a settled meaning in law. Sometimes it means just knowing what you're doing, *American Surety Co. v. Sullivan,* 7 F.2d 605, 606 (2d Cir.1925) (L.Hand, J.)—more precisely, "act[ing] knowingly with respect to the material elements of the offense." American Law Institute, *Model Penal Code and Commentaries* § 2.02(8) and comment 10, pp. 248–50 (1985); see also *United States v. Ladish Malting Co.,* 135 F.3d 484, 487 (7th Cir. 1998). Sometimes it means even less— means acting recklessly or even just grossly negligently, as in tort law's "willful and wanton" formula. E.g., *Carter v. Chicago Police Officers,* 165 F.3d 1071, 1080–81 (7th Cir.1998); *Davis v. United States,* 716 F.2d 418, 425–26 (7th Cir.1983); *Poole v. City of Rolling Meadows,* 167 Ill.2d 41, 212 Ill.Dec. 171, 656 N.E.2d 768, 771 (Ill.1995). Sometimes it means more than knowing what you're doing—means also knowing that what you're doing is unlawful. E.g., *Bryan v. United States,* 524 U.S. 184, 118 S.Ct. 1939, 1944–46, 141 L.Ed.2d 197 (1998). But it never means willing the consequences of an act known to be illegal, and so in the obstruction of justice context it is satisfied by deliberately doing a known illegal act, such as killing a witness, that has the natural and probable effect of obstructing justice; the defendant does not have to desire the obstruction.

If we stick with *Neiswender,* probably we shall eventually have to discard *Ewing* and its predecessors. But as the issue is not unavoidably presented by the present case, because neither party has mentioned it, I am content merely to flag it for future reference.