[Cite as *State v. Rafter*, 2019-Ohio-529.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
No. 106787

**STATE OF OHIO**

PLAINTIFF-APPELLEE

vs.

**MARK RAFTER**

DEFENDANT-APPELLANT

**JUDGMENT:**
AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-16-604059-A

**BEFORE:** Yarbrough, J.,* S. Gallagher, P.J., and Keough, J.

**RELEASED AND JOURNALIZED:** February 14, 2019

**ATTORNEY FOR APPELLANT**

Kevin M. Cafferkey
55 Public Square, Suite 2100
Cleveland, OH 44113


**ATTORNEYS FOR APPELLEE**

Michael C. O'Malley
Cuyahoga County Prosecutor

Blaise D. Thomas
Assistant County Prosecutor
Justice Center, 9th Floor
1200 Ontario Street
Cleveland, OH 44113

STEPHEN A. YARBROUGH, J.:*

{¶1}  While driving the wrong-way on an interstate highway, defendant-appellant Mark Rafter struck another vehicle at high speed, instantly killing its sole occupant, Kayla Coates.  Rafter had ongoing mental health issues and suicidal thoughts, and shortly before the crash, Rafter telephoned his son to tell him he loved him and "that he's going to drive into a wall."  Rafter entered the highway using an exit ramp.  He aimed his truck head-on at the vehicle driven by Ms. Coates.  Rafter's vehicle and Ms. Coates' vehicle both sustained great damage. Rafter's vehicle flipped as a result of the collision, but he survived the crash. Ms. Coates did not survive. The state charged Rafter with aggravated murder, murder, two counts of felonious assault, and aggravated vehicular homicide.  A jury found him guilty of all counts.  This appeal followed.

I. Evidence of Aggravated Murder and Felonious Assault

{¶2} Rafter does not dispute that he caused the victim's death, but argues that the state failed to prove that he acted purposely and with prior calculation and design when doing so.  He maintains that the evidence showed only that he desired to kill himself, not anyone else.

{¶3} We review questions regarding the sufficiency of the evidence de novo, but are highly deferential to the verdict.  We assess a challenge to the sufficiency of the evidence in the light most favorable to the state and will reverse a conviction "only if no rational trier of fact could have agreed with the jury."  *Cavazos v. Smith*, 565 U.S. 1, 2, 132 S.Ct. 2, 181 L.Ed.2d 311 (2011) (per curiam), citing *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

{¶4} The aggravated murder count alleged that Rafter purposely, and with prior calculation and design, caused the victim's death. *See* R.C. 2903.01(A). A person acts "purposely" when it is that person's "specific intent to cause a certain result." R.C. 2901.22(A). A person acts with "prior calculation and design" in the context of aggravated murder when the person uses "advance reasoning to formulate the purpose to kill." *State v. Walker*, 150 Ohio St.3d 409, 2016-Ohio-8295, 82 N.E.3d 1124, ¶ 18.

{¶5} A rational trier of fact could have found that Rafter intentionally collided with the victim's car in a manner that demonstrated "the calculated decision to kill." *State v. Cotton*, 56 Ohio St.2d 8, 11, 381 N.E.2d 190 (1978).

{¶6} In addition to testimony that Rafter intended to kill himself, the state offered testimony by an eyewitness to the collision. The eyewitness was traveling on the four-lane interstate highway in the third lane, five to seven car lengths behind the victim, who was in the second lane.[1] The eyewitness saw Rafter entered the interstate from an exit ramp and swerve into the second lane. The eyewitness said that Rafter "was maintaining that lane until [the victim] swerved at the last second."

---

[1] "When roadways have more than 3 lanes in any one direction, the lanes shall be identified and labeled with numbers, starting with the far left lane" and, "[w]hen using lane numbers, the far left lane shall be called 'Lane 1.' Each lane to the right is numbered sequentially 2 through n." National Traffic Incident Management Coalition, http://ntimc.transportation.org/Documents/12.13.10_laneDesignation-2pg-printer.pdf (accessed January 15, 2019).

{¶7} It truly was the "last" second — a forensic expert who examined data from electronic recorders in both Rafter's truck and the victim's car testified that one second before impact, the victim "was standing on the brake," decelerating from 69 miles per hour to 53 miles per hour. Rafter, however, had his accelerator position at 100 percent throttle, meaning that Rafter "was attempting to go as fast as that vehicle can possibly go" — the expert estimated that Rafter's truck was traveling between 95 to105 miles per hour at impact. The nearly head-on impact was so severe that the victim's car decelerated faster than it was moving, a circumstance that occurs only when "another vehicle is going so fast and the other vehicle is so big that it drives that vehicle, not only stops it almost dead in its tracks, but pushes it rearward and accelerates it rearward." Not only did Rafter's speed stop the victim's car and push it backwards at impact, Rafter's truck continued moving forward, flipping and sliding 400 feet on its roof before stopping.

{¶8} Rafter maintains this case is akin to a suicidal person jumping off a building and inadvertently falling on and killing a pedestrian. But it would be a more accurate comparison in this case to say that the person jumping off the building actually tried to land on another person. What Rafter is really arguing is that in trying to kill himself by colliding with another vehicle, he did not desire the victim's death. "Deliberately to do something that one knows will have a particular result is often in the criminal law enough to establish the requisite intention to bring about that result." *United States v. Gage*, 183 F.3d 711, 718-719 (7th Cir.1999) (Posner, J., concurring). But whether Rafter "desired" the victim's death is immaterial; he knew that the manner in which he would take his life would bring about her death, too. *See id*. A rational trier of fact could conclude that Rafter purposely collided with the victim's vehicle. A rational trier of fact could also conclude that Rafter knew that at the high rate of speed he was traveling, a collision with another vehicle that was severe enough to cause his death would surely cause the death of the driver of the other vehicle. There was sufficient evidence that he acted with prior calculation and design.

{¶9} Finally, Rafter argues that his conviction for aggravated murder is against the weight of the evidence. He does not, however, make an argument that differs in any respect from his argument that the aggravated murder count lacked sufficient evidence. The legal sufficiency of the evidence is a distinct legal concept from the weight of the evidence, *State v. Thompkins*, 78 Ohio St.3d 380, 386-387, 678 N.E.2d 541 (1997), paragraph two of the syllabus, and Rafter's failure to distinguish them violates App.R. 16(A)(7). *State v. Mallory*, 8th Dist. Cuyahoga No. 106052, 2018-Ohio-1846, ¶ 21; *State v. Crosby*, 8th Dist. Cuyahoga No. 106504, 2018-Ohio-3793, ¶ 6.

II. Sufficiency of the Evidence of Murder and Felonious Assault

**{¶10}** Rafter also challenges the sufficiency and the manifest weight of the evidence supporting his convictions for murder, felonious assault, and aggravated vehicular homicide. Those convictions were merged into the aggravated murder count for sentencing, so any error on the merged counts would be harmless. *State v. Ramos*, 8th Dist. Cuyahoga No. 103596, 2016-Ohio-7685, ¶ 18; *State v. Moton*, 8th Dist. Cuyahoga No. 104470, 2018-Ohio-737, ¶ 12.

### III. Gruesome Photograph

**{¶11}** Over defense objection, the court admitted into evidence a photograph of the deceased victim as she lay inside her car after the collision. The photograph was unquestionably gruesome — the force of the impact, in the words of the medical examiner, resulted in the "complete evisceration of the brain from the cranial cavity."[2] In addition, the medical examiner noted that the victim suffered a number of fractures, some of which were depicted in the photograph. Rafter argues that the court abused its discretion by admitting the photograph because he did not challenge the cause of death, and the only purpose to be served by the photograph was to inflame the passions of the jury.

**{¶12}** This is a noncapital case,[3] so we apply the usual rules of admitting evidence by considering whether the photograph is relevant and, if so, is the probative value of the photographic evidence substantially outweighed by the danger of unfair prejudice to the defendant. *Morales* at 257. Under this standard, "the probative value must be minimal and the prejudice great before the evidence may be excluded." *Id.*

---

[2] In fact, the coroner could not locate the victim's brain during the autopsy. In a motion in limine to exclude the photograph, Rafter claimed that there was "some evidence" that the victim's brain had been expelled as a result of the collision and "affixed to the front of Rafter's truck."

[3] The Ohio Supreme Court applies "a 'stricter evidentiary standard for the introduction of photographs' in capital cases than in other contexts." *State v. Montgomery*, 148 Ohio St.3d 347, 2016-Ohio-5487, 71 N.E.3d 180, ¶ 137, quoting *State v. Morales*, 32 Ohio St.3d 252, 257-258, 513 N.E.2d 267 (1987). In capital cases, "gruesome photographs are admissible only if the 'probative value of each photograph * * * outweigh[s] the danger of prejudice

**{¶13}** The photograph was relevant. Although Rafter agreed that the victim died as a result of the collision, the state was entitled to offer visual proof of the victim's catastrophic injuries as evidence that Rafter was purposely driving into an on-coming car. The severity of the victim's injuries went to proof of Rafter's purpose — the high rate of speed required to kill himself would also kill the driver of the other car.

**{¶14}** Rafter makes no specific argument on the prejudice he suffered from the admission of the photograph and claims only that the state introduced it "solely for purpose of prejudicing the jury against Mr. Rafter for the tragic death of the young [victim]." This argument ignores the actual relevancy of the photograph. In addition, the trial judge gave reasoned consideration to the issue:

> I find that the jury would certainly be able to look at that photo if they feel it's necessary. I don't think it's prejudicial or overly prejudicial to the defendant just because it is a gruesome photo even in the court's own view. It is certainly necessary to portray the nature and extent of the accident and the effect that it had on the driver of that vehicle.

Tr. 767.

**{¶15}** As such, Rafter does not show unfair prejudice, let alone unfair prejudice that substantiates outweighing the probative value.

**{¶16}** For similar reasons, we reject Rafter's argument that the court erred by permitting repetitive and graphic testimony regarding the victim's injuries. In any event, Rafter's argument is too self-serving to merit serious consideration: it amounts to a claim that the details of the murder are so gruesome that they should be excluded from the jury.

### IV. Misconduct

---

to the defendant and, additionally [is] not * * * repetitive or cumulative in nature.'" *Id*.

**{¶17}** Rafter cites several points in the state's closing argument that he claims misstated facts, misstated definitions of certain legal terms, and misstated an expert's testimony.

**{¶18}** A prosecuting attorney may not use "improper methods calculated to produce a wrongful conviction." *Berger v. United States*, 295 U.S. 78, 88, 55 S.Ct. 629, 79 L.Ed. 1314 (1935). When a prosecuting attorney's conduct "so infect[s] the trial with unfairness as to make the resulting conviction a denial of due process," a new trial will be ordered. *Donnelly v. DeCristoforo*, 416 U.S. 637, 643, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974). The due process right to a fair trial means that we examine misconduct in context of trial as a whole. No trial is perfect, and in the "tension and turmoil" of trial, we give both the prosecution and the defense "wide latitude in summation as to what the evidence has shown and what reasonable inferences may be drawn therefrom." *State v. Stephens*, 24 Ohio St.2d 76, 82, 263 N.E. 2d 773, (1970). Isolated remarks that do not affect the whole trial will not warrant a new trial.

{¶19} In addition, we apply the rules regarding forfeited error: "It is a general rule that an appellate court will not consider any error which counsel for a party complaining of the trial court's judgment could have called but did not call to the trial court's attention at a time when such error could have been avoided or corrected by the trial court." *State v. Childs*, 14 Ohio St.2d 56, 58, 236 N.E.2d 545 (1968). When a defendant fails to object to alleged acts of prosecutorial misconduct, we review only for plain error. *State v. Powell*, 132 Ohio St.3d 233, 2012-Ohio-2577, 971 N.E.2d 865, ¶ 177. "Notice of plain error * * * is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), paragraph three of the syllabus. Plain error is an "obvious defect" in the trial proceedings that affects the outcome of the trial. *State v. Rogers*, 143 Ohio St.3d 385, 2015-Ohio-2459, 38 N.E.3d 860, ¶ 22. And even if an appellate court finds that plain error occurred, reversal is not mandatory: the Supreme Court has "admonish[ed] courts to notice plain error 'with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice.'" *Id*. at ¶ 23, quoting *State v. Barnes*, 94 Ohio St.3d 21, 2002-Ohio-68, 759 N.E.2d 1240, ¶ 27.

{¶20} Rafter did not object when the state, during its closing argument, told the jury that a state highway patrol trooper who investigated the crash "told you that based on the information and the sketch that he was able to draw, based on his measurements, that this act was intentional * * *."  In fact, the trooper testified that he was not doing a crash reconstruction and that in a call with local police who were handling the investigation, he stressed that the highway patrol was not doing a crash report "because the information that was provided to us was an intentional act and not a crash accident."  The state thus mischaracterized this testimony.  The trooper did not give an opinion, based on his measurements at the scene, that Rafter acted intentionally; he said only that he had been told that Rafter acted intentionally.  That mischaracterization, however, was slight enough that it did not result in a manifest miscarriage of justice warranting a new trial.

{¶21} Rafter likewise failed to object when the state told the jury that for purposes of felonious assault, it did not need to prove that Rafter acted with a purpose to kill the victim but need only prove that he acted knowing that his conduct "could cause" that result.  The state now concedes that the proper definition of "knowingly" is that a person's conduct "will probably cause a certain result."  *See* R.C. 2901.22(B).  Even if this rises to the level of plain error, we exercise our discretion to disregard it given that we have affirmed the conviction for aggravated murder and as previously noted, the court merged the sentence for felonious assault into the aggravated murder count.

**{¶22}** Finally, Rafter failed to object to the state's comment that the expert mechanic said that Rafter drove straight for the victim's car, without taking any evasive maneuvers, because the expert said that he could not recover Rafter's steering wheel data. We find no error because the cited part of closing argument referred to the eyewitness, not the expert mechanic. The state did not mischaracterize this testimony.

## V. Bad Acts

**{¶23}** During direct examination, Rafter's son testified that Rafter used marijuana to "self-medicate." The state then asked the following questions: (1) "Have you ever seen your dad use marijuana?"; (2) "You said he did use marijuana to self-medicate. What's your knowledge about that?"; and (3) "Was he using marijuana in February of 2016?" Although the court sustained objections to all three questions, Rafter argues that the trial judge should have independently instructed the jury to disregard the question. Rafter did not ask the court for a curative instruction so he has forfeited this assignment of error on appeal. *State v. Allen*, 73 Ohio St.3d 626, 639, 1995-Ohio-283, 653 N.E.2d 675; *State v. Fears*, 86 Ohio St.3d 329, 335, 1999-Ohio-111, 715 N.E.2d 136. In addition, by sustaining the objection, the court prevented the son from answering the questions. Rafter has shown no prejudice.

**{¶24}** Judgment affirmed.

It is ordered that appellee recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
*STEPHEN A. YARBROUGH, JUDGE

SEAN C. GALLAGHER, P.J., and
KATHLEEN ANN KEOUGH, J., CONCUR

*(Sitting by Assignment: Judge Stephen A. Yarbrough, retired, of the Sixth District Court of Appeals).